## Brennan et al. *v.* Huber, Appellant.

300

Argued October 2, 1933.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Oliver C. Reithmiller,* for appellant.—The plaintiff after having previously sued the servant or agent of this defendant for the same damages arising from the same negligence on which this action is based and having recovered a verdict against the servant or agent

and entered judgment thereon cannot maintain this action against the defendant, the principal: Betcher v. McChesney, 255 Pa. 394; Zimmer v. Casey, 296 Pa. 529; Brobston v. Darby Borough, 290 Pa. 331; Goldman v. Mitchell Fletcher Co., 292 Pa. 354; Wright v. J. and S. Wilcox, 19 Wendell (N. Y.) 343; Parsons v. Wenchell et al., 59 Mass. (5 Cushing) 592.

*James F. Masterson,* for appellee.—The uncollectible judgment against the agent was no bar to the subsequent action against the principal: Greenberg v. Palmieri, 71 N. J. L. 83; Steele-Smith Gro. Co. v. Potthast, 109 Iowa 413; Curtis v. Williamson, L. R. 10 Q. B. 57; Merrill v. Kenyon, 48 Conn. 314; Reid v. Miller, 205 Mass. 80; Floyd v. Brown, 1 Rawle 121; Beymer v. Bonsall, 79 Pa. 298; Horworth v. Simon, 95 Pa. Superior Ct. 410, 413; DesClazi v. N. A. Fruit Exch., 95 Pa. Superior Ct. 293, 296.

OPINION BY PARKER, J., March 3, 1934:

The question involved in this appeal is whether a judgment for plaintiff in a suit in trespass against a servant is a bar to a second suit by the same plaintiff against the master. The facts with one exception were not in dispute, and as to that one fact the verdict of the jury was conclusive.

The plaintiff, Edward Brennan, a minor, was struck and injured by an automobile owned by Wilhemina V. Huber and driven by her brother, Joseph V. Huber, while engaged in the business of his sister and when she was not present. On December 24, 1929, the same persons who are plaintiffs in this action brought suit in trespass against the driver to recover damages resulting to the minor and his parents from the accident, and that action resulted in a verdict for the plaintiffs on which judgment was entered. On the trial of that action, Joseph swore that he was engaged

in the business of his sister at the time of the accident. Not receiving actual satisfaction of the judgment, this action was begun against the owner and on the trial before a jury there was offered in evidence the complete record of the former action against the servant, or agent, including the verdict and judgment entered thereon and an affidavit of plaintiffs to hold for bail.

Before beginning any action, Christopher J. Brennan, the father of the minor testified that he had a conversation with the owner and driver of the car while together. He further said: "I asked who owned the car and she said she did, and I asked her if her brother was driving for her at the time and she said no, he was on his own pleasure and I asked him in her presence and he said, 'No, I was on my own pleasure, my sister had nothing to do with the car, although she owns it.' The sister said, 'I don't have a license but I bought it for the purpose of using it, for our family's use.' " On cross examination he also stated that he explained to them that he wished to know whether Joseph, the driver, was the agent of the owner and to whom he would look for damages. Both sides having conceded that the judgment in the first case was conclusive as to the negligence and amount of damages in the second case and that the driver was the agent of the owner, the trial court submitted one question to the jury. They were instructed that if the plaintiffs were deceived by the defendant as to the agency of the driver and when the first suit was brought they did not know that the driver at the time of the accident was engaged in the owner's business, the verdict should be for plaintiffs; otherwise for defendant. The verdict for the plaintiffs has determined the facts submitted in plaintiffs' favor.

The defendant then urged, as she now does, that

the second action could not be maintained, that the plaintiffs were required to elect against which of the two they would proceed, and that when judgment was entered, such judgment was a bar to further proceedings against the other. The diligence of counsel and our own efforts have not disclosed a case in Pennsylvania precisely in point unless it may be that of Betcher v. McChesney, 255 Pa. 394, 100 A. 124. There are at least dicta in that case which lend support to the position of appellant. As we shall endeavor to show later, we are convinced, however, that that case is not decisive of the question involved, and it becomes necessary to make an examination of cases in this and other jurisdictions to arrive at a correct solution of the question involved.

The appellant more specifically urges that as the driver and owner were not joint tort feasors, the second suit could not be maintained, thereby tacitly admitting that if this were a case of a joint tort the second suit could be maintained. As is pointed out by Judge Cooley: "Where, however, the servant is the only active wrongdoer, and the master is liable also only because of the application of the doctrine of *respondeat superior,* because the act was done by the servant in the course of employment, there is a difference of opinion as to whether the master and the servant may be held jointly liable": 1 Cooley on Torts, (4th Ed.) §87. The dicta in Betcher v. McChesney, supra, would seem to indicate that in Pennsylvania master and servant, where the master is not an active wrongdoer, are not joint tort feasors. If they were jointly liable then under the authorities to which we will refer that would be an end to the appeal. We prefer, however, to assume, for the sake of argument at least, that here the master and servant were not joint tort feasors as we are of the opinion that the result is not affected by that situation.

It is apparent that there was in the early cases both in England and in the United States considerable confusion as to the effect of a verdict against one affected by a joint liability upon the right to prosecute another or others in the cases both of joint contracts and joint torts. The weight of authority in England favored the position that in tort but one action could be maintained, but the English doctrine has not been followed in the United States.

As to joint contracts and contracts involving the acts of master and servant and principal and agent, the law is well settled in Pennsylvania. The leading case of Beymer v. Bonsall, 79 Pa. 298, although it involved an action on a contract, dealt with a relationship which has a striking analogy to the situation we are here considering. There certain brokers entered into a contract with the plaintiff for the sale of a quantity of oil. The brokers having failed to comply with their contract, the buyer brought suit and recovered a judgment against the broker for his loss. Subsequently the brokers advised plaintiff that they were undisclosed agents for one Bonsall. Thereupon a second suit was brought against the undisclosed principal and judgment was recovered, notwithstanding the plea of the former judgment. The Supreme Court there said (p. 300): "Undoubtedly an agent who makes a contract in his own name without disclosing his agency is liable to the other party. The latter acts upon his credit and is not bound to yield up his right to hold the former personally, merely because he discloses a principal who is also liable. The principal is liable because the contract was for his benefit, and the agent is benefited by his being presumedly the creditor, for there can be but one satisfaction. But it does not follow that the agent can afterwards discharge himself by putting the creditor to his election. Being already liable by his contract,

he can be discharged only by satisfaction of it, by himself or another. So the principal has no right to compel the creditor to elect his action, or to discharge either himself or his agent, but can defend his agent only by making satisfaction for him.''

In the case of Lovejoy v. Murray, 3 U. S. 1, the United States Supreme Court repudiated the English doctrine and gave its unqualified approval to the principle that successive actions might be maintained against joint tort feasors and that the entering of judgment against one was not a bar to further suits against others. In the case of Fox v. The Northern Liberties, 3 W. & S. 103, 106, the Supreme Court of this state said: ''For joint trespassers are liable either jointly or severally to the party injured. He may, therefore, sue each separately, at the same time, or consecutively, and prosecute his suit against each to judgment; and having obtained judgment against each, he has a right to elect to proceed by execution to enforce payment of any one of the judgments he pleases, and, in doing so, will select, as we may suppose, that judgment which he shall consider the most favorable for him.'' This case is of peculiar interest because the plaintiff was not there permitted, however, to recover in the second suit because the action was trover and in Pennsylvania the law was settled at an early date that a judgment in trover ''transfers to the defendant the plaintiff's right to the property.'' KENT, C. J., in the case of Livingston v. Bishop, 1 Johnson 290, 3 Am. Dec. 330, pointed out that the failure to distinguish those cases of tort which involved the recovery of damages affecting a thing certain as in trover from an action in case for damages that were not certain was responsible for the conclusion of some courts that the second action could not be maintained. Our courts did not fall into that error.

In Floyd v. Browne, Admr., 1 Rawle 121, 125, GIB-

son, C. J., said: "A plaintiff is not compelled to elect between actions that are consistent with each other. Separate actions against a number who are severally liable for the same thing or against the same defendant on distinct securities for the same debt or duty, are consistent, being concurrent remedies. Trespass is, in its nature, joint and several; and in separate actions against joint trespassers, being consistent with each other, nothing but actual satisfaction by one will discharge the rest. So far the law is clear." Also, see Allen v. Liggett, 81 Pa. 486.

So far as we have been able to discover, the English rule has been followed in the United States only in Virginia and in some early cases in Rhode Island, later overruled. See note to Blackman v. Simpson, 58 L. R. A. 410, for an exhaustive review of the cases involving this question. The Pennsylvania cases are in accord with the American doctrine except in the cases of trover and there only for the reasons heretofore indicated.

But it is further urged that we have here not a case of joint tort feasors, but rather a situation where the servant is the actual wrongdoer and the master is liable only on the principle of *respondeat superior,* and that while perhaps separate actions might be maintained, the entering of judgment was equivalent to actual satisfaction. The fallacy of this argument is apparent in the light of the decisions to which we have referred. It is in trover and analogous situations only that judgment is the equivalent of satisfaction and that for the reason that by the judgment title to the property passes out of the plaintiff.

Only one other reason has been assigned in support of the rule contended for by the appellant and that is that actions may not be divided into parts. This rule, as we apprehend, has no application to the facts here present under the law in this state. If a second action

on contract could be maintained against an undisclosed principal after a judgment against the agent, certainly neither reason, equity, nor justice would bar this action in tort. It is idle to suggest that suits may be started against each and pursued to verdict, but if a judgment is entered then the satisfaction has been received and the second remedy may not be pursued. One is invited to bring his action and pursue it to verdict and then deprived of the fruits of a successful suit. As Lord Ellenborough said in the case of Drake v. Mitchell, 3 East. 258: "A judgment recovered in any form of action, is still but a security for the original cause of action, until it be made productive in satisfaction to the party; and, therefore, till then, it cannot operate to change any other collateral concurrent remedy which the party may have."

"Where two persons are severally, though not jointly, liable for the same tort, a judgment against one is no bar to a suit against the other": 1 Cooley on Torts (4th Ed.) p. 262. This is subject to the exception in Pennsylvania pointed out above in cases of trover and similar situations where the damages affect a thing certain and title to that thing is transferred to the wrongdoer.

The statements by Mr. Justice STEWART in the case of Betcher v. McChesney, 255 Pa. 394, 100 A. 124, are obiter dicta. In that case the lower court refused to receive the record of a judgment against an employee in a subsequent suit against the employer when offered for the purpose of restricting plaintiff to the amount recovered in the first judgment. This was clearly error. The order of the court was not a reversal and entry of judgment for the defendant, but the case was sent back for a new trial. As it was admitted by both sides in that case just what the record would show, judgment would have been entered for the de-

fendant if the court had been of the opinion that the second action could not be maintained.

While the dicta of Judge STEWART are entitled to great respect, they are not binding upon us and we believe are not in accord with the great weight of authority. One of the main contentions of Judge STEWART was based upon the assumption that contribution could not be enforced among joint tort feasors, thus distinguishing the relationship existing in a case of joint torts and a tort where the master is only responsible on the principle of *respondeat superior*. This, of course, is not now the law in Pennsylvania, if it ever was: Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 141 A. 231.

We are also of the opinion that the filing by the plaintiffs of an affidavit to hold to bail did not affect the result and would not have so done even though the defendant in the first action had been imprisoned. While a few cases decide that the mere issuing of an execution is a conclusive election to consider the defendant as exclusively responsible, a great majority of the American cases discountenance this absurdity. "How vain and delusive that law must be which declares the right of an injured party to proceed severally against every person concerned in committing an injury; which sustains him until the liability of every wrongdoer is severally determined, and evidenced by a final judgment; and which, after thus 'holding the word of promise to his ear, breaks it to his hope' by forbidding him to attempt the execution of either judgment, upon penalty of releasing all the others": Freeman on Judgments, §236. Also, see Sheldon v. Kibbe, 3 Conn. 214; Knight v. Nelson, 117 Mass. 458; 1 Cooley on Torts, p. 262.

We believe our conclusions are in accord with the trend of the law as announced by our own Supreme Court. The question here raised may be easily obvi-

ated by suing both defendants in one action although they are only severally liable: Williams v. Kozlowski, 313 Pa. 219, 226, 169 A. 148.

The facts developed in the trial which showed that the plaintiff was misled by the statements of the master from which it might be inferred that she stated before any suit was brought that the driver was not engaged in her business were at least strongly persuasive for the conclusion at which we have arrived. It would seem grossly inequitable that in this manner one could be led into a position of suing an irresponsible party and that such judgment should be a bar to an action against one made responsible for that very thing by the law.

Judgment is affirmed.