Joseph Melnick Building and Loan Association, to use, Appellant, *v.* Melnick et al.

Argued January 7, 1949.  Before MAXEY, C. J., DREW, STERN, PATTERSON, STEARNE and JONES, JJ.

*W. Bradley Ward,* with him *Lemuel B. Schofield, John B. Brumbelow* and *Marvin Comisky,* for appellant.

*Emanuel Moss,* with him *Bernard L. Lemisch* and *Moss & Moss,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 21, 1949:

These are appeals from orders of the court below making absolute a rule to open judgments and quashing appellant's writ of attachment execution issued against a bank as garnishee. The principal question involved is whether a release by a third party creditor of undisclosed principals, executed after full disclosure, constitutes a release of the agent of the principals. The court below decided that it did and made the orders appealed from.

It is unnecessary to detail all of the complicated facts in this and in collaterally related litigation. A summary of the controlling facts will suffice. On July 2, 1925, William Rabinowitz (appellee) and Samuel Melnick, the use-plaintiff (appellant) bought twenty-one properties *as partners.* They took title in the name of appellee and appellant's wife. These *three* persons executed twenty-one bonds and mortgages secured on the twenty-one properties. Ten mortgages were given to Joseph Melnick B. & L. Association (herein called Melnick Association) and the other eleven were given to the Link B. & L. Association (herein called Link Association). On July 17, 1925 (fifteen days later), appellant learned that appellee had in fact been acting as agent for undisclosed principals, viz.: Abraham Rabinowitz (appellee's father) and Ephraim Fruchbom, who were copartners, trading as Standard Provision Company (herein called Standard). Upon this disclosure an oral agreement was entered into between the appellant, appellee, and the two persons comprising Standard in which it was *agreed that appellee's half-*

*interest in the partnership existing between appellee and appellant, including the same terms as to sharing the income, expenses, and profits and losses, would be transferred to Standard.* In accordance with this new agreement of partnership, title to the twenty-one properties was conveyed on August 18, 1925 to appellant's wife and Abraham Rabinowitz and Ephraim Fruchbom, copartners, trading as Standard Provision Company. Title deeds in these names were subsequently recorded. *Thereafter the parties who had been trading as Standard were equal partners in the properties with appellant.* (These facts were established in the so-called "contribution case" hereinafter referred to and which was included as part of the record.)

In November 1926, appellant and Standard (through Abraham Rabinowitz and Ephraim Fruchbom) orally agreed to dissolve their partnership. On May 26, 1927, the twenty-one properties were divided. Eleven were conveyed, subject to the mortgages, to the parties trading as Standard. On June 14, 1927 the other ten were conveyed to appellant's wife for appellant and were thereafter conveyed by her to appellant on March 16, 1929. Subsequently the parties trading as Standard became incorporated and the eleven properties, subject to the mortgages, were conveyed to that corporation.

On May 13, 1929, because of defaults, twenty of the bonds were reduced to judgment by the Melnick and Link Associations. The judgments were entered against appellant, appellant's wife and appellee jointly. (Appellant had previously paid one of the twenty-one mortgages on one of the ten properties owned by him). The Melnick Association had its nine judgments consolidated on May 15, 1929. The Link Association likewise had its eleven judgments consolidated. After attachment execution, the judgments of both associations were paid in full during 1929 with monies and other property belonging to appellant. In May and June of

1931, the judgments were marked to the use of appellant and assigned to him. (During this period appellee was in dire financial straits and in due course filed a voluntary petition in bankruptcy in the United States District Court. The many collateral proceedings which followed have no direct bearing on this case and need not be mentioned.)

In 1932, appellant instituted an equity action in the Court of Common Pleas No. 3, of Philadelphia County, September Term, 1932, No. 4187 against the two individuals trading as Standard to recover in contribution the proportionate amount of the loss which appellant allegedly sustained. The court in that case (herein called the contribution case) made findings of fact and conclusions of law, the gist of which were that appellant and the persons comprising Standard were in fact partners; that appellee had acted originally as agent for his undisclosed principals, viz.: the parties composing Standard; that "On July 17, 1925, *by oral agreement of all parties, [appellee's] connection with the partnership was terminated* and . . ., Abraham Rabinowitz and Ephraim Fruchbom individually and as copartners, trading as Standard Provision Company, patently *assumed their characters as real owners and partners to the extent of a half interest with [appellant]"* (emphasis supplied); that the amounts of mortgages against the eleven properties owned by Standard totaled $28,000; and that this amount had been satisfied out of property belonging to appellant. The court entered a *decree nisi* ordering that judgment be entered for appellant in the sum of $28,000 with interest.

Thereafter, on July 20, 1938, appellant entered into a compromise settlement agreement with the parties in interest against whom the decree nisi had been entered in the contribution case. This agreement provided for the payment of $18,800 over a named period of time and under certain conditions. Upon payment of this "settle-

ment amount" within the specified period, *appellant agreed to execute and deliver a general release discharging the persons comprising Standard from,* ". . . all manner of actions, debts, agreements, promises, claims, and demands, of whatsoever nature, in law or equity, which [appellant] . . . may have. . . ." In addition he agreed to mark the contribution case settled. *However, the agreement contained a provision reserving all rights of appellant against appellee.* It appears that the payment of $18,800 was made, all terms of the compromise settlement were carried out and the general release was given.

In October 1945 and February 1946, appellant, as use-plaintiff, issued two writs of fi. fa. under the Melnick Association judgments to sell certain premises owned by appellee. Appellee took no action in these proceedings. Appellant thereafter obtained a deficiency judgment in proper proceedings under the Deficiency Judgment Act and again appellee took no action.

On May 29, 1946 appellant issued a writ of attachment execution, under the Melnick Association judgments, against the Corn Exchange National Bank and Trust Company as garnishee attaching $13,157.48 in appellee's name.

On July 2, 1946 appellee filed this petition to open the judgment. A rule was granted and was subsequently made absolute. Certiorari was entered on July 22, 1948 as to this order. On July 22, 1948, upon motion of appellee, the writ of attachment execution was dissolved and quashed. On June 24, 1948, upon petition and motion of appellee, the court below ordered that any decree entered in the case of the *Melnick Association* judgments to the use of appellant against appellee be applicable to proceedings in the *Link Association* judgments to the use of appellant against appellee. These appeals followed.

Upon the foregoing factual situation the learned court below decided that since appellee was acting as agent for undisclosed principals when he and appellant, as partners, purchased the twenty-one properties and gave their bonds and mortgages as part of the purchase money, and since the principals (later disclosed) were released by appellant under the terms of a compromise agreement, this released appellee, the agent. With this conclusion we are unable to agree for reasons which shall be stated.

Many jurisdictions in the United States have adopted the view that if, after learning of the existence of an undisclosed principal, the third party obtains a judgment against the agent, *there has been an election* and the principal is discharged. See: Restatement, Agency, Sec. 210; Williston on Contracts, Vol. I, Revised Edition, Sec. 289. Pennsylvania, however, has not adopted this view. Where a third party executes a release to an undisclosed principal (after full disclosure), he may proceed against the agent until full satisfaction. This Court has decided that the third party has the option to proceed against either the agent or his principal, or both, *but is entitled only to one satisfaction.* This principle was established in the leading case of *Beymer v. Bonsall,* 79 Pa. 298, which has been consistently followed. See: *Aber to use v. Pennsylvania Co. for Insurances on Lives, etc.,* 269 Pa. 384, 112 A. 444; *Pennsylvania Company, etc., et al. v. Clark et al.,* 340 Pa. 433, 447, 448, 18 A. 2d 807; *Robinson v. Wallace,* 65 Pa. Superior Ct. 54, 55; *Horwath et al., v. Simon,* 95 Pa. Superior Ct. 410, 413; *Descalzi et al. v. North American Fruit Exchange,* 96 Pa. Superior Ct. 293, 296; *Nusbaum v. Warwick Hotel Company,* 112 Pa. Superior Ct. 277, 284, 170 A. 388; *Brennan et al. v. Huber,* 112 Pa. Superior Ct. 299, 304, 171 A. 122. Cf. *Pittsburgh Terminal Coal Corporation v. Williams,* 70 F. 2d 65 (C. C. A. 3). Professor Williston says: "What has been

termed the Pennsylvania view permits pursuit of both agent and principal until the claim is satisfied." Williston on Contracts, Vol. I, Revised Edition, Sec. 289, p. 855. See also: Professor Merrill's Article, "Election Between Agent and Undisclosed Principal: Shall We Follow the Restatement?" 12 Nebraska Law Bulletin 100.

If under the Pennsylvania rule, the third person *may* proceed against either the agent or the undisclosed principal or both, the liability is *joint and several.* See: *Williamson v. O'Dwyer & Ahern Co.,* 127 Ark. 530; 192 S. W. 899, 900; *Lincoln Joint Stock Land Bank of Lincoln v. Bexten et al.* (Neb.), 250 N. W. 84, 88; *Clarry Lumber Co., Inc., v. O'Brien,* 117 Misc. Rep. 319; 191 N. Y. S. 182. The fact that appellant expressly reserved his rights against appellee when he executed the release to the undisclosed principals therefor becomes significant. In Freeman on Judgments, Fifth Edition, Vol. 2, Sec. 1141, it is stated, p. 2377: "But notwithstanding the strict common-law rule that a release of one of several joint or joint and several debtors operates as a release of all the others, which some courts are inclined to follow notwithstanding attempts by the creditor to reserve in the instrument a right to proceed further against the latter, the prevailing rule now is that this result is avoided where the release shows that it was not intended to discharge other debtors except to the extent of the payment made, if any, by the one released." This Court early adopted this principle: *Burke et al. v. Noble,* 48 Pa. 168; *Greenwald & Co. v. Kaster,* 86 Pa. 45; *Link Building and Loan Association, to use, v. Melnick et al.,* 325 Pa. 182, 186; 189 A. 470; *Wickerham v. Vitori,* 345 Pa. 111, 112, 25 A. 2d 801; *Taylor v. Graham,* 62 Pa. Superior Ct. 246; *Baldwin v. Ely,* 127 Pa. Superior Ct. 110, 115, 193 A. 299. It clearly appears from the express words used in the compromise settlement agreement that appellant never intended *by his release* to discharge

appellee from any rights that he, the appellant, might have had against appellee.

This requires a consideration of what rights appellant still possesses against appellee. If, under the facts, appellant had no rights against appellee, then such reservation was nugatory.

The controlling question is: what effect did the agreement between appellant and Abraham Rabinowitz and Ephraim Fruchbom (*where the latter two persons were substituted in place of appellee as partners of appellant*) have upon the rights of appellant and appellee *inter-se?* This agreement, *as between the parties,* effected a novation with regard to the prior legal relationship existing between appellant and appellee. By it appellee was discharged from any duty *he* owed to *appellant.* Abraham Rabinowitz and Ephraim Fruchbom were *substituted* as appellant's partners and were obligated to carry out the duties *theretofore* imposed upon appellee.

Sec. 424 of Restatement, Contracts, defines the term novation as follows: "A novation . . . is a contract that (a) discharges immediately a previous contractual duty or a duty to make compensation, and (b) creates a new contractual duty, and (c) includes as a party one who neither owed the previous duty nor was entitled to its performance. In *Wright v. Hanna,* 210 Pa. 349, 353, 59 A. 1097, it is said: "The essentials of novation are the displacement and extinction of the prior contract, the substitution of a new contract, a sufficient consideration therefor, and the consent of the parties thereto." See also: *Curtin v. People's Natural Gas Company,* 233 Pa. 397, 401, 82 A. 503; *Jones v. Commonwealth Casualty Company,* 255 Pa. 566, 573, 100 A. 450; *Taylor v. Stanley Co. of America,* 305 Pa. 546, 551, 158 A. 157.

Appellant, upon learning that appellee, his partner, was acting for undisclosed principals, entered into an

oral agreement whereby the undisclosed principals were substituted as partners in *appellee's place.* The court in the unappealed contribution case found as a fact that: ". . . an oral agreement was then and there entered into by and between the *plaintiff* (appellant) and said *defendants* (Abraham Rabinowitz and Ephraim Fruchbom) individually and as copartners trading as Standard Provision Company, and *William Rabinowitz* (appellee), whereby it was agreed that the latter transfer to the defendants, Abraham Rabinowitz and Ephraim Fruchbom, copartners trading as Standard Provision Company, the half interest he held in the partnership, under the same terms and conditions as to sharing the income, expenses, profits and losses which constituted the original agreement between himself and the plaintiff. . . ." (Emphasis supplied.) It therefore unequivocally appears that appellant intended to substitute Abraham Rabinowitz and Ephraim Fruchbom as his partners and to *discharge* appellee, *insofar as appellant was concerned,* from all liability arising out of transactions involving this land. That a novation was intended and was actually effected becomes apparent when appellant and the substituted partners agreed to abide by the same terms for the sharing of income and expenses and distribution of profits and losses *as originally existed between appellant and appellee.* Furthermore, titles to these twenty-one properties were conveyed to the new partners and appellant in accordance with the agreement. Finally, when the parties decided to dissolve the partnership, the properties were divided between appellant and Abraham Rabinowitz and Ephraim Fruchbom, *not between appellant and appellee.* Whatever contractual duties existed between appellant and appellee were therefore discharged and new contractual duties arose between appellant and the principals, as partners, when the new agreement was made. Throughout this case, appellant has consistently

asserted that Abraham Rabinowitz and Ephraim Fruchbom *were* his partners.

The novation, of course, had no effect on whatever rights the mortgagees (Melnick and the Link Associations) might have had against appellee, as agent, and Abraham Rabinowitz and Ephraim Fruchbom as undisclosed principals. We are not herein concerned with these rights. *Appellant* may not, however, assert that, as assignee, he took the assignment *subject to these rights.* He agreed to the substitution of partners prior to the assignment although he was under no legal duty to do so. By accepting the new partners, in place of appellee, appellant relied on the personal credit of the substituted partners instead of the personal credit of appellee. A person who enters into contractual obligations with an agent, where the agent is acting for an undisclosed principal, may enforce his claim against the agent *because he has acted upon the agent's credit.* As this Court said in *Beymer v. Bonsall,* supra, p. 300: "Undoubtedly an agent who makes a contract in his own name without disclosing his agency is liable to the other party. The latter acts upon his credit and is not bound to yield up his right to hold the former personally, merely because he discloses a principal who is also liable." The *mortgagees would have been entitled to recover against the appellee.* But where *appellant* received the assignment of the judgment with full knowledge of all the circumstances, after he had effectively released appellee from liability *because of the novation,* he is now estopped from asserting a right which he surrendered. Under such circumstances a reservation in the release of a right against appellee availed the appellant nothing.

Appellant's other contentions do not merit serious consideration. The defense of laches is inapplicable. Appellant by his own act discharged appellee from liability and therefore will not be permitted to recover on the judgment. Mere delay by appellee in his applica-

tion to open will not validate an invalid judgment. Laches will not be imputed where no injury has resulted to the other party by reason of the delay: *Montgomery Brothers, Inc., v. Montgomery et al.*, 269 Pa. 332, 112 A. 474; *Selmer et al. v. Smith et al.*, 285 Pa. 67, 131 A. 663; *Schireson v. Shafer et al.*, 354 Pa. 485, 47 A. 2d 665; *Lutherland, Inc., et al. v. Dahlen et al.*, 357 Pa. 143, 157, 53 A. 2d 143. No injury has resulted to appellant under these facts since he was a party *to the novation.*

The court below did not err in quashing the writ and dissolving the attachment execution. With the judgment opened, the execution may not proceed but remains subject to the control of the court. Ordinarily where a judgment is opened after a writ of attachment execution has issued, the attachment may not be quashed or dissolved. It remains a lien upon the property seized, awaiting the final determination of the validity of the judgment: *Adams v. James L. Leeds Company*, 189 Pa. 544, 42 A. 195; *Giles v. Ryan et al.*, 317 Pa. 65, 68, 176 A. 1, and cases therein cited. In all such cases, if the judgment is ultimately sustained, the defendant remains liable on the judgment and his seized property may be employed in satisfaction thereof. However, where the defendant in the judgment can never be held liable thereon, and consequently his seized property can never be employed to satisfy the same, such attachment execution may be quashed or dissolved. This precise question, between some of the same parties and under the same judgments, arose in *Link Building and Loan Association, to use, v. Melnick et al.*, 325 Pa. 182, 189 A. 470. Melnick (appellant herein) released his former wife from the judgments but, nevertheless, issued attachment execution against her property. The execution was quashed by the court below and this Court affirmed. Mr. Justice LINN said, p. 185: ". . . by agreeing not to proceed against the other in this execution [the present appellant use-plaintiff], disqualified him-

self from proceeding with it against her. She is therefore entitled to the aid of the restraining arm of the court, for, if he broke his contract by going on with the execution, he would become answerable to her for the resulting breach: equity will prevent this circuity of action by now giving effect to the intention of the two parties to the contract." The instant case is analogous. The result—the dissolution of the attachment—follows precisely as it would have if payment of the judgment had been proved. Proof of the novation, like proof of payment, must have the same effect. Appellant discharged the appellee from liability by the *novation* which, under the circumstances, is similar to the *release* in *Link Building and Loan Association, to use, v. Melnick et al.,* supra. What this Court decided in that case has equal application here.

The orders of the court below are affirmed at appellant's cost.