421 A.2d 174

**QUEEN CITY ELECTRICAL SUPPLY CO., INC., Appellant,**

**v.**

**SOLTIS ELECTRIC CO., INC., Defendant,**

**and**

**The Cement National Bank, Appellee.**

Supreme Court of Pennsylvania.

Argued April 21, 1980.
Decided Sept. 22, 1980.

Robert M. Davison, Bethlehem, for appellant.

Howard E. Snyder, Allentown, for appellee Soltis Electric Co., Inc.

Irving W. Coleman, Allentown, for appellee The Cement Nat. Bank.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION BY THE COURT

KAUFFMAN, Justice.

This appeal is from an order of the Superior Court reversing the Court of Common Pleas of Lehigh County and opening a default judgment entered against a garnishee.[1] The issue here presented is whether a court should open a snap default judgment entered without notice against a garnishee one day after the time allowed for filing answers to interrogatories had expired where (1) the garnishee is a stranger to the underlying transaction, (2) the default was excusable, (3) the answers to interrogatories were filed one day after the default judgment was taken, (4) the garnishor would reap a windfall in excess of $20,000.00, and (5) although the petition to open was not filed for twenty months, the garnishor sustained no prejudice from the delay.

On July 15, 1974, appellant, Queen City Electrical Supply Co., Inc. ("Queen City" or "garnishor"), obtained a judgment by confession in an assumpsit action against defendant, Soltis Electric Co., Inc. ("Soltis"), in the sum of $24,759.17.[2] Queen City sought to execute upon the judgment by garnishing an account Soltis maintained with appellee, The Cement National Bank ("the bank"). A praecipe for writ of attachment execution and interrogatories were filed by Queen City on August 9, 1974 and served on the bank on August 12, 1974.

On August 15, 1974, the bank sent the interrogatories to its attorney, Jerome W. Burkepile, Esquire ("Burkepile"),

1. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 724(a) (Pamph.1979).

2. The judgment was based upon a note executed by Soltis in favor of Queen City in 'the amount of $21,351.78 plus interest and costs.

along with all information necessary to prepare answers. The completed answers, which revealed that Soltis' account contained $1,762.56, were delivered to the bank on August 21, 1974, and were promptly executed and returned to Burkepile the same day.[3]

Burkepile, who was in poor health and working only part time, failed to file the promptly completed answers within the twenty day period required by Rule 3144(b) of the Pennsylvania Rules of Civil Procedure. At 9:51 a. m. on September 4, 1974, *the first day* after service of the answers was due, Queen City, *without any notice*, entered a snap default judgment against the bank in the amount of $24,759.17.[4] Later that day, Queen City's counsel, Howard S. Epstein, Esquire ("Epstein"), notified the bank that the default judgment had been taken. The bank's answers, showing that Soltis' account contained only $1,762.56, were filed the *very next day.*[5]

To further complicate matters, Soltis was adjudicated a bankrupt on the same day that the bank's answers to the interrogatories were filed. An associate of Epstein's law firm, Howard E. Snyder, Esquire ("Snyder"), was appointed trustee in bankruptcy for Soltis at the first meeting of

3. A copy of the executed answers simultaneously was sent by the bank directly to Soltis.

4. The default judgment was entered pursuant to Rule 3146(a) of the Pennsylvania Rules of Civil Procedure, which provides:
   If the garnishee within the time allowed by these rules fails to file an answer to interrogatories containing a notice to answer, the prothonotary on praecipe of the plaintiff shall enter judgment in favor of the plaintiff and against the garnishee *in the same amount as the judgment of the plaintiff against the defendant,* together with interest and costs.
   Pa.R.Civ.P. 3146(a) (emphasis supplied). We note that the Pennsylvania Rules of Civil Procedure now require prior notice of intent to enter a default judgment except in two limited instances. *See* Pa.R. Civ.P. 237.1.

5. This case should not be confused with those in which defaults were permitted to remain uncured until the tardy petitions to open were filed. *See, e. g., In re McCauley's Estate,* 478 Pa. 83, 385 A.2d 1324 (1978); *Myers v. Mooney Aircraft, Inc.,* 429 Pa. 177, 240 A.2d 505 (1967).

creditors on November 14, 1976.[6]  Despite the fact that his law firm also represented garnishor, Snyder, on behalf of the bankruptcy estate, directed a letter to the bank requesting payment of the balance of the Soltis account.

Uncertain as to whom it owed the money in view of the conflicting demands of the garnishor and the bankruptcy estate,[7] the bank consulted the attorney who had assumed responsibility for Burkepile's unfinished legal business, William A. Steckel, Esquire ("Steckel").  On January 16, 1975, Steckel advised the bank that the bankruptcy estate was entitled to the Soltis account.  He further advised, however, that such payment would not affect the default judgment. With respect to that judgment, Steckel wrote:

> Several courses are open to the Bank at this time.  The first would be a Petition to open the judgment against the Bank on the grounds that the payment, if it had been made, would have been a preferential one voidable by the subsequently appointed Trustee in Bankruptcy.  This, however, requires positive action and with attendant publicity on the part of the Bank.  The second course would be to do nothing since Attorney Epstein has assured me he will contact me before moving in the matter, if he, in fact, will move at all.  I believe this course would be advisable at the moment, since the interpretation of Rule 3148(b), providing for execution "generally" on the judgment, in my opinion permits such execution only to the extent of the amount of the deposit and not to the entire amount of the judgment.  It is the interpretation of this Rule that presently is delaying any action on the part of Attorney Epstein.

On January 17, 1975, in accordance with Steckel's advice, the bank paid the proceeds of the Soltis account to the trustee in bankruptcy, but took no further action with respect to the default judgment.

**6.**  Burkepile, whose poor health had permitted him to work only part time since the summer of 1974, was hospitalized on October 11, 1974 and died on November 8, 1974.

**7.**  While Epstein represented the garnishor, his associate, Snyder, was trustee in bankruptcy for Soltis.

By letter dated January 21, 1975, Epstein advised Steckel that he believed that Queen City had a valid judgment under Rule 3148(b) of the Pennsylvania Rules of Civil Procedure against the bank for the full amount of its judgment against Soltis, i. e., $24,759.17, but that he was willing to negotiate. Steckel failed to communicate Epstein's position to the bank until May 18, 1976, following receipt of a letter dated May 7, 1976, in which Epstein *for the first time in twenty months* threatened execution if the judgment was not paid. At that time, Steckel informed the bank that his representation of the Burkepile estate possibly conflicted with his continued representation of the bank, and new counsel was immediately retained for the bank.

When it became clear for the first time in May of 1976 that Epstein intended to execute on the snap default judgment he obtained 20 months earlier and attempt to collect not only the $1,762.56 which had been in the Soltis account, but also a windfall in excess of $20,000.00, the bank's new counsel promptly filed a petition to open the default judgment. By order dated April 27, 1977, the Court of Common Pleas of Lehigh County dismissed the petition on the ground that the bank's failure to act until June 1976 was "inexcusable and of such duration as to recommend the permanency of plaintiff's [Queen City's] judgment." *Queen City Electrical Supply Co. v. Soltis Electric Co.,* 37 Lehigh L.J. 225 (1977).

The Superior Court reversed the order of the Court of Common Pleas and opened the judgment. We agree that the trial court's refusal to open the judgment was a manifest abuse of discretion because (1) the bank's excusable default was cured without prejudice to garnishor only one day after the snap judgment, which was entered by Epstein without notice at 9:51 a. m. of the first day after the interrogatory answers were due; (2) the bank as garnishee was an innocent stranger to the underlying controversy between garnishor and Soltis, and held only $1,726.56 in the Soltis account; (3) there was considerable legal confusion regarding the respective rights of the parties following the

bankruptcy of Soltis and payment by the bank of the Soltis account to Epstein's associate, the bankruptcy trustee; (4) garnishor permitted twenty months to elapse before making any attempt to execute on the judgment; (5) the bank moved promptly through new counsel to open the judgment upon first receipt of notice that garnishor seriously intended to execute for the full $24,759.17; (6) dismissal of the bank's petition would result in a windfall to garnishor in excess of $20,000.00; and (7) garnishor was not prejudiced by the bank's delay in moving to open the judgment.

In making the determination whether to open a default judgment, three factors usually are considered: (1) whether the default was excusable; (2) whether the party seeking to open the judgment has shown a meritorious defense, and (3) whether the petition to open has been promptly filed. *In re McCauley's Estate*, 478 Pa. 83, 88, 385 A.2d 1324, 1327 (1978); *Broad Mountain Club, Inc. v. Lazur*, 461 Pa. 668, 669, 337 A.2d 599, *cert. denied*, 423 U.S. 1020, 96 S.Ct. 458, 46 L.Ed.2d 392 (1975); *Ruszynski v. Jesray Construction Corp.*, 457 Pa. 510, 512, 326 A.2d 326, 328 (1974); *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 498, 305 A.2d 698, 700 (1973); *Balk v. Ford Motor Co.*, 446 Pa. 137, 140, 285 A.2d 128, 130–31 (1971). In light of Burkepile's illness and the diligence which the bank showed (1) in promptly forwarding the interrogatories and the information necessary to answer them to Burkepile, (2) promptly executing the answers prepared by Burkepile and returning them to him, and (3) promptly notifying Burkepile of the entry of the default judgment, no serious contention can be made that Burkepile's two–day delay in filing the answers was an inexcusable default on the part of the bank. *See Zehr v. March*, 407 Pa. 471, 181 A.2d 428 (1962); *Brooks v. Surman Dental Lab, Inc.*, 262 Pa.Super. 369, 396 A.2d 799 (1979). *See also Stephens v. Bartholomew*, 422 Pa. 311, 220 A.2d 617 (1966); *St. Joe Paper Co. v. Morc Box Co.*, 260 Pa.Super. 515, 394 A.2d 1045 (1979). Further, there is no dispute that the total amount held by the bank in the Soltis account at the time of the garnishment was $1,762.56. Thus, the bank had

an obviously meritorious defense to a claim by the garnishor for $24,759.17.

The sole remaining issue, then, is whether the petition to open was promptly filed. This is always an equitable determination which must be made in light of what is reasonable under the circumstances. Indeed, it is well established that where equitable circumstances exist, a default judgment may be opened regardless of the time that may have elapsed between entry of the judgment and filing of the petition to open. *See Baranofski v. Malone*, 371 Pa. 479, 482, 91 A.2d 908, 909 (1952).

At the outset, we note that snap judgments taken without notice are strongly disfavored by the courts.[8] As this court stated in *Kraynick v. Hertz*, 443 Pa. 105, 277 A.2d 144 (1971):

> The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim. It is not [a] procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant.

*Id.*, 443 Pa. at 111, 277 A.2d at 147. *See also Safeguard Investment Co. v. Energy Services Associates, Inc.*, 258 Pa.Super. 512, 515–16, 393 A.2d 476, 477–78 (1978); *Ashton v. Ashton*, 257 Pa.Super. 134, 138–40, 390 A.2d 282, 285 (1978); *Silverman v. Polis*, 230 Pa.Super. 366, 370–71, 326 A.2d 452, 454–55 (1974).

We also note that the courts of this Commonwealth, in recognition of the potential for injustice from requiring a stranger to the underlying controversy to pay a claim for which he had no original responsibility, have expressed a greater willingness to relieve a defaulting garnishee than a defaulting defendant. *See, e. g., Globe and Republic Insur-*

8. In fact, Rule 237.1 of the Pennsylvania Rules of Civil Procedure, adopted by this Court on December 14, 1979 and made effective on February 1, 1980, requires prior notice of intent to enter a default judgment in cases such as that presented herein. *See* note 4 *supra*.

*ance Co. v. Davis*, 125 Pa.Super. 91, 95–96, 190 A. 175, 177 (1937); *Modern Home Heating Co. v. Diehl*, 92 Pa.Super. 571, 574 (1927); *McFadden v. Millerstown Deposit Bank*, 28 Pa.Super. 583, 584–85 (1903); *Potts v. Harmer*, 19 Pa.Super. 252, 254 (1902); *Goodfriend v. Diamond Chemical Co.*, 25 D. & C.2d 321, 324, *aff'd per curiam*, 196 Pa.Super. 319, 175 A.2d 537 (1961).

■ Here, the delay in filing the petition to open resulted substantially from the legal confusion produced by the conflicting demands made upon the bank by the garnishor and the trustee in bankruptcy.[9] Contributing to this confusion in no small part was the dual role played by the law firm representing the garnishor.[10] Pursuant to advice of counsel, the bank delivered the total balance of the Soltis account to the trustee in bankruptcy and took no affirmative action to open the default judgment. Garnishor's attorney did not threaten execution for the full $24,759.17 until May 7, 1976, and made no effort to enforce the judgment. We conclude that the bank's failure to file its petition to open the default judgment until June 15, 1976 was reasonable under the circumstances.

Accordingly, the trial court's dismissal of the bank's petition to open was a manifest abuse of discretion.

Order affirmed.

ROBERTS, J., filed a dissenting opinion in which LARSEN, J., joins.

ROBERTS, Justice, dissenting.

I dissent. I would not permit the judgment to be opened to its full extent of $24,759.17. This record reflects an uncontested, valid judgment against appellee–garnishee in the sum of $1,762.56. Thus, unlike the majority, I would not

**9.** It should be emphasized that there was *no delay* in curing the excusable default. The bank's answers to interrogatories were filed *the very next day* after the default judgment was entered without any notice whatsoever.

**10.** *See* note 7 *supra.*

permit appellee–garnishee to open this portion. As to the remainder of the judgment, this record reveals an inordinate delay on the part of appellee–garnishee in seeking to open judgment. I am satisfied, however, that appellant–judgment creditor suffered no prejudice as a result. See e. g., *Vallish v. Rapoport*, 364 Pa. 25, 70 A.2d 616 (1950); *Joseph Melnick Bldg. & Loan Ass'n. v. Melnick*, 361 Pa. 328, 64 A.2d 773 (1949); 7 Std.Pa.Prac. Ch. 30 (Relief From Judgments), § 79 at p. 102. Accordingly, I would permit the remainder of the judgment to be opened, in the sum of $22,996.61.

LARSEN, J., joins in this dissenting opinion.