**In re NORTH AMERICAN COMMUNICATIONS, INC., Debtor.**

**NORTH AMERICAN COMMUNICATIONS, INC. Plaintiff,**

**v.**

**BARRY BLAU & ASSOCIATES, INC.; and Barry Blau & Partners, Inc., Defendants.**

Bankruptcy No. 91–3794–BM.
Adv. No. 92–0283–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

May 13, 1993.

---

Stephen J. Laidhold, Robert G. Sable, Sable, Makoroff & Gusky, P.C., Pittsburgh, PA, for debtor/plaintiff.

Steven Baicker–McKee, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, for defendants.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor/plaintiff North American Communications, Inc. ("NAC") has brought an action for breach of contract to recover unpaid accounts receivable in the amount of $57,320.39 allegedly owed by defendants Barry Blau & Associates, Inc. and/or Barry Blau & Partners, Inc. ("Blau") for services rendered.

NAC asserts that it contracted with Blau for the services rendered and that the contract price has not been paid.

Blau asserts that NAC contracted with Trans World Airlines ("TWA"), not with Blau, for the services rendered; that it merely acted as an agent on behalf of TWA; and that its agency on behalf of TWA had been fully disclosed to NAC.

Judgment will be entered in favor of Blau and against NAC for reasons set forth below.[1]

## –I–

### FACTS

NAC is in the direct mass mailing business. It produces and mails on average between three million and five million pieces per week. Its production facility and its accounting department are located in Duncansville, Pennsylvania. Its sales office is located in Armonk, New York.

NAC sometimes contracts directly with advertising agencies and at other times contracts directly with so-called "end users".

Blau is an advertising agency located in Fairfield, Connecticut. It designs mass mailings on behalf of its "end user" clients and occasionally contracts directly with vendors such as NAC to produce and to mail items directly to the public.

NAC had contracted with Blau on several occasions prior to October of 1991. The contract in each instance was between NAC and Blau. The "end user"—i.e., Blau's client—was *not* a party to the contract. Blau issued a purchase order to NAC, which in turn issued an invoice to Blau. Payment for the work done by NAC under these contracts was made to NAC by Blau.

TWA had been one of Blau's clients from late–1990 until late–1992. However, the arrangement between Blau and TWA was significantly different from Blau's arrangement with its other "end user" clients.

Blau was concerned that TWA would not pay Blau when it contracted with other parties on behalf of TWA because of severe financial difficulties TWA was experiencing. Accordingly, Blau and TWA agreed that Blau would solicit bids and negotiate contracts on behalf of TWA but that TWA, rather than Blau, would contract with vendors. Blau was to serve as TWA's disclosed agent, rather than as a principal in its own right, and was to receive a commission from TWA for its services.

Blau never formally notified NAC that its relationship with TWA was different from its relationship with its other "end user" clients.

Blau solicited bids from NAC in 1991 in connection with two (2) projects for which TWA was the "end user". The first project involved the production and mailing of approximately one million pieces of a project known as the Coupon Folio project. The second project involved the production and mailing of approximately eighty-two thousand pieces of a project known as the Good News Postcard project.

### A. *Coupon Folio Project*

On October 4, 1991, NAC submitted a preliminary bid to Blau in connection with the Coupon Folio project.

On October 24, 1991, Blau sent to NAC a preliminary schedule detailing various aspects of the project.

The next day—i.e., on October 25, 1991—NAC sent a document described as a "Confirmation Letter" concerning the project to:

Cheryl DiRollo

Barry Blau Associates

Greenfield Commons

1960 Bronson Road

Fairfield, CT 06430

Cheryl DiRollo is the employee at Blau who solicited the bid from NAC and negotiated with NAC concerning the project.

The penultimate paragraph of the "Confirmation Letter" states as follows:

> If all of the above meets with your approval, please sign the enclosed copy where indicated and return to me with your purchase order. Direction by you to proceed with any processing step will be deemed acceptance of all terms of this confirmation.

---

1. Count II of the complaint asserted a cause of action against Blau for common law fraud. NAC indicated in the Pretrial Stipulation that it was unable to prove fraud and accordingly had abandoned such a cause of action. Moreover, it offered no evidence on the matter at trial. The claim for fraud therefore will not be addressed in this Memorandum Opinion.

A purchase order for the project was issued by TWA—not by Blau—and was faxed by TWA on October 31, 1991 to NAC's sales office in Armonk, New York. The purchase order expressly stated that the order was from:

TWA
I–29 AND 112TH ST
KANSAS CITY MO 64153
ATTN JD WELLS MCI 1–223

The following "addendum" was prominently displayed at the end of the purchase order:

```
MAIL        TRANS WORLD AIRLINES
INVOICE     C/O BARRY BLAU & PARTNERS
   TO       1960 BRONSON ROAD
            FAIRFIELD, CONNECTICUT 06430
            ATTN: FRED KASEFF
```

NAC subsequently issued three (3) invoices totalling $52,158.02 in connection with the Coupon Folio project on November 30, 1991, December 31, 1991, and February 18, 1992, respectively. All three invoices were issued to:

TWA C/O
BARRY BLAU & ASSOCIATES
1960 BRONSON ROAD
FAIRFIELD, CT 06430

The invoices have not been paid either by Blau or by TWA, which presently is in bankruptcy in Delaware, and are still due and owing.

### B. *Good News Postcard Project*

On September 26, 1991, NAC submitted a preliminary bid to Blau in connection with the Good News Postcard project.

A purchase order for the project was issued by TWA—not by Blau—and was faxed by TWA on December 5, 1991 to NAC's sales offices in Armonk, New York.

Like the purchase order issued by TWA in connection with the other project, this purchase order contained the following "addendum":

```
MAIL        TRANS WORLD AIRLINES
INVOICE     C/O BARRY BLAU & PARTNERS
   TO       1960 BRONSON ROAD
            FAIRFIELD, CONNECTICUT 06430
            ATTN: FRED KASEFF
```

Unlike the previous purchase order, this purchase order did *not* expressly state who was placing the order.

Four (4) days later—i.e., on December 9, 1991—NAC sent a "Confirmation Letter" concerning the project to:

Cheryl DiRollo
Barry Blau & Partners
1960 Bronson Road
Fairfield, CT 06430

The penultimate paragraph of the document was identical to that of the "Confirmation Letter" sent in connection with the other project.

NAC subsequently issued invoices totalling $5,162.37 in connection with the Good News Postcard project on December 31, 1991 and January 10, 1992, respectively. The invoices have not been paid either by Blau or by TWA and are still due and owing.

–II–

### ANALYSIS

NAC maintains that it contracted with Blau, not TWA, and that Blau therefore is liable to it for the unpaid contract balances of the two projects. It denies that Blau's agency on behalf of TWA was disclosed to it before the contracts were finalized.

Blau asserts that TWA, not Blau, contracted with NAC and that TWA, not Blau, therefore is liable to NAC. Blau maintains that it operated only as TWA's agent in soliciting bids and negotiating the two contracts on behalf of TWA. According to Blau, its relationship with TWA was disclosed to NAC before the contracts were executed.

It already has been determined that Blau was serving as TWA's agent in connection with the above contracts. This does not mean, however, that Blau therefore cannot be held liable for the unpaid contract balances of $52,158.02 and $5,162.37, respectively.

One who acts without disclosing his agency and the identity of his principal may be personally liable on a contract. *See Burton v. Boland*, 339 Pa.Super. 444, 446, 489 A.2d 243, 245 (1985). The agent may in that event be jointly and severally liable along with the undisclosed principal. *See*

*Joseph Melnick Building & Loan Ass'n v. Melnick,* 361 Pa. 328, 334, 64 A.2d 773, 776 (1949).

Disclosure of the agency relationship and of the principal's identity must occur *before* the contract is finalized. Subsequent disclosure will not relieve the agent of liability. *See Johnson v. Putnam,* 54 Pa.Super. 281, 282 (1913).

Disclosure to a third party of the agency relationship and of the principal's identity can occur in any of several ways. The agent or the principal may so disclose to a third party. It is not necessary that such disclosure be made by the agent or the principal. The requisite disclosure also can occur when the third party is in possession of information which indicates the existence of the agency relationship and the identity of the principal:

> If the manifestation of the principal or agent to the third person, or the information the third person has, is such that he is able or should be able to distinguish the principal from all others, or he otherwise has notice of the principal's identity, the principal is disclosed.

*Marano v. Granata,* 147 Pa.Super. 558, 561–62, 24 A.2d 148, 150 (1942).

Two issues are presented in this case:

(1) whether it was disclosed to NAC that TWA was the principal and that Blau was acting as its agent with respect to the above contracts; and

(2) if there was disclosure, whether it occurred before the above contracts were entered into.

## A. *Was There Disclosure?*

The circumstances surrounding the two contracts in this case compel the conclusion that the required disclosure occurred. NAC had information available to it from which it either knew or should have known that TWA was the principal and that Blau was acting as its agent in soliciting bids from and negotiating with debtor.

### (i) *Coupon Folio Project.*

The purchase order for the Coupon Folio project was issued on October 31, 1991 by TWA, not by Blau. Information contained in the purchase order should have made NAC aware at that time that TWA was the principal contracting with NAC and that Blau was acting as its agent.

The words "TRANS WORLD AIRLINES" were emblazoned in large print directly above the words "PURCHASE ORDER" at the very top of the first page of the purchase order.

It was conspicuously stated near the top of the first page that the order was "from TWA".

The "addendum" located near the end of the purchase order stated in large print that invoices were to be mailed to "TRANS WORLD AIRLINES C/O BARRY BLAU & PARTNERS".

As has been noted, NAC previously had done business on several occasions with Blau wherein Blau unquestionably was contracting in its own right with NAC. All of these purchase orders had been issued by Blau and were entirely different in format from the purchase order issued by TWA. A sophisticated vendor such as NAC should have realized from this difference that the purchase order issued on October 31, 1991 had not been issued by Blau.

As the above considerations indicate, NAC should have known that Blau was acting as an agent and that TWA was its principal. The matter does not stop there, however. NAC's conduct subsequent to the issuance of the purchase order dated October 31, 1991 indicates that it in fact knew that Blau was acting as an agent and that TWA was its principal. NAC issued invoices with respect to the Coupon Folio project dated November 30, 1991, December 31, 1991, and February 18, 1992, respectively. All three (3) invoices were issued to:

TWA C/O

BARRY BLAU & ASSOCIATES

It is highly improbable that NAC would have issued invoices in this manner unless it recognized that Blau was acting as an agent and TWA was its principal.

**(ii)** *Good News Postcard Project.*

■ The same conclusion must be reached with respect to the Good News Postcard project.

The purchase order for this project also was issued by TWA, not by Blau, on December 5, 1991. Information contained therein should have made NAC aware that TWA was the principal contracting with it and that Blau was acting as TWA's agent.

With one inconsequential exception, this invoice was substantially identical in format to the invoice TWA had issued in connection with the other project. For instance, the words "TRANS WORLD AIRLINES" appeared in large print directly above the words "PURCHASE ORDER" at the top of the first page. The "addendum" at the end of the purchase order stated that invoices were to be mailed to "TRANS WORLD AIRLINES C/O BARRY BLAU & PARTNERS". This purchase order, like the one issued by TWA on October 31, 1991, was altogether different in format from purchase orders issued by Blau when it contracted in its own right with NAC.

The major difference between this purchase order and the one issued on October 31, 1991 is that this purchase order did not expressly state that the order was "from TWA".

This difference does *not* undermine the conclusion that NAC should have known upon receipt of the purchase order that TWA was the principal and that Blau was its agent. The other similarities between the two purchase orders were sufficient to place a vendor as sophisticated as NAC on notice of Blau's agency on behalf of TWA. If NAC should have known that the purchase order dated October 31, 1991 was "from TWA", it should have known that the purchase order dated December 5, 1992 also was "from TWA".

Moreover, NAC's subsequent conduct indicates that it in fact knew that Blau was acting as an agent and that TWA was its principal. NAC issued invoices for the Good News Postcard project on December 31, 1991 and January 10, 1992. All three invoices were issued to:

TWA

C/O

BARRY BLAU

NAC would not have issued invoices in this way unless it recognized that Blau was acting as an agent and TWA was its principal.

**B.** *When Did Disclosure Occur?*

One final matter remains to be resolved.

■ NAC insists that Blau's agency on behalf of TWA had not been disclosed to it prior to when it entered into contracts for the two projects.

This contention is without merit. Blau's agency on behalf of TWA had been disclosed to NAC *before* NAC had contracted to perform the required work.

**(i)** *Coupon Folio Project.*

It already has been determined TWA contracted with NAC concerning the Coupon Folio project on October 31, 1991 and that NAC knew or should have known *at that time* that Blau was serving only as TWA's agent.

There is no credible evidence that a contract for this project had been entered into prior to October 31, 1991, and hence before the above disclosure occurred.

The so-called "Confirmation Letter" issued on October 25, 1991, approximately a week before debtor first learned of Blau's agency on behalf of TWA, did *not* amount to an acceptance by NAC of a contract proposed by Blau. As has been noted, the penultimate paragraph of the document states as follows:

> If all of the above meets with your approval, please sign the enclosed copy where indicated and return to me with your purchase order. Direction by you to proceed with any processing step will be deemed acceptance of all terms of this confirmation.

This language indicates that NAC was still proposing terms and conditions of the contract and was soliciting acceptance thereof. The most reasonable inference is

that a deal had not yet been struck when the so-called "Confirmation Letter" dated October 25, 1991 was issued. It was not struck until after October 31, 1991, when TWA issued its purchase order and NAC agreed to go forward with the project.

### (ii) Good News Postcard Project.

It already has been determined that TWA contracted with NAC concerning the Good News Postcard project on December 5, 1991 and that NAC knew or should have known *at that time* that Blau was serving as TWA's agent.

As is the case with the other project, there is no credible evidence that a contract for this project had been entered into prior to December 5, 1991 and hence before Blau's agency in connection with this particular project had been disclosed.

The "Confirmation Letter" issued by NAC to Blau in connection with this project was not issued until December 9, 1991, several days *after* TWA issued its purchase order wherein its identity as principal and Blau's agency were disclosed.

Judgment will be entered in favor of Blau and against NAC.