## Singer *v.* Ritter, Appellant.

Argued March 22, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Edward Watson,* for appellant.

*Herman H. Greenberg,* with him *Mortimer N. Eastburn,* for appellee.

OPINION BY DITHRICH, J., July 20, 1950:

Early in October 1939, defendant appellant and Charles Singer, who was at the time plaintiff appellee's husband, were desirous of forming a partnership for the purpose of operating a dental laboratory. Each was to contribute $1500 to the partnership, and, since neither had sufficient capital, appellee agreed to obtain a mortgage on premises owned by her and to turn the proceeds over to her husband and appellant to enable them to set up their laboratory. She obtained a mortgage for $2000, and it was agreed that the partnership would assume the obligation of the mortgage and would pay the taxes, the interest, and installments on account of the principal

of said mortgage to the mortgagee from the proceeds of the business until the full amount of the mortgage debt was paid. On October 14, 1939, at the instance of appellee's then attorney, appellant executed a note in her favor in the amount of $980. Appellee and the attorney testified that the note was given as additional security, and the court below so found; it represented the sum required by appellant to complete his capital contribution of $1500. As of October 14, 1944, the sum of $1248.75 had been paid in semi-annual installments on account of principal and interest. The payments were made by partnership checks and charged to the personal account of appellant.

In March of 1944 the property covered by the mortgage was sold and appellee was obliged to pay the sum of $1279.55 in order to satisfy the mortgage of record. In December of 1947 the partnership was dissolved and appellant assumed all the partnership debts. In March of 1948 appellee and her husband separated, and in a financial settlement entered into between them at that time she released her husband from all obligations to her. In November of that year she entered judgment on the note and assessed damages for $1422.60. Appellant obtained a rule to show cause why the judgment should not be opened and he be permitted to enter a defense. He admits execution of the note and expiration of the time for payment but contends that the payments aforesaid made to the mortgagee and charged to his personal account were sufficient in amount to more than pay the note; and that even if the note had not been paid, he was discharged from any further obligation to appellee by reason of her release of his partner and co-obligor.

Depositions and counter-depositions were taken, and after argument the petition to open was dismissed and the rule to show cause was discharged. As stated by the learned president judge of the court below: "An analysis

of the testimony convinces the Court that plaintiff . . . agreed with her husband . . . and the defendant . . . that she would mortgage her own separate property to the extent of $2,000.00 and would loan such money to the partnership . . . and would look to the . . . partners for payment of the full amount of . . . $2,000.00. The partners were to repay the $2,000.00 by paying off the mortgage plus interest and any costs. It appears that plaintiff was willing to accept the promise of . . . her husband, without additional security, but insofar as Arthur Ritter was concerned, who was a stranger to her, the plaintiff, through her attorney, required added collateral to secure the debt. Plaintiff's attorney, therefore, had the defendant . . . execute a judgment note in the amount of $980.00 as additional security for the payment of the loan to plaintiff. Plaintiff's testimony is clear that she believed that the debt had been paid off by the amount being applied to the mortgage, but upon her property being sold she found that there was a deficiency of some $1,279.55 which she was forced to pay. There is no testimony whatsoever that plaintiff ever agreed that partial payment by the partnership, either to the full extent of the note or otherwise, would extinguish the obligation on the note itself. There is still remaining a balance owed on the original $2,000.00 advanced by the plaintiff, a sum in excess of the judgment note . . ."

In *Stoner v. Sley System Garages,* 353 Pa. 532, 46 A. 2d 172, the latest decision of the Supreme Court affirming an order refusing a petition to open a judgment, the Court, in an opinion by the present Chief Justice, said (pages 534, 535) :

"An application to open a judgment is an equitable proceeding addressed to the sound discretion of the court, and on appeal the question is whether there has been a rightful exercise of discretion.

"In B. & L. Assn. v. Walukiewicz, 322 Pa. 240, 185 A. 648, we said : 'An application to open a judgment entered

upon a warrant of attorney is an equitable proceeding governed by equitable principles and addressed to the sound discretion of the court. On appeal we consider only whether the court kept within the bounds of its discretionary power: Boyd v. Kirch, 234 Pa. 432; Newton T. & T. Co. v. Underwood, 317 Pa. 212; Kaier Co. v. O'Brien, 202 Pa. 153, 160. An oath against an oath or a mere conflict of evidence do not warrant the submission of the issue to a jury. The evidence must carry such conviction of truth as to convince the judge that the judgment should be opened and a jury trial awarded: Mielcuszny et ux. v. Rosol, 317 Pa. 91. The weight of evidence and credibility of the witnesses are for the judge who sits as a chancellor: Jenkintown Nat. Bank's App., 124 Pa. 337, 344; Augustine v. Wolf, 215 Pa. 558, 562.' "

In answer to appellant's contention that, since all of the payments on account of the mortgage were charged to his personal account, he should be relieved from any further liability, the learned court below said: "It may be that between Charles Singer and Arthur Ritter some adjustment would have to be made if the full amount . . . paid on the mortgage was charged to the profits of Arthur Ritter, but this is not a good defense for refusal to pay the judgment note."

As to appellant's further contention that appellee's release of her husband likewise released him, we agree that it would so operate insofar as the partnership obligation was concerned; but the court below found as a fact on competent testimony that the obligation to pay the note was not the joint obligation of the partnership, but the separate obligation of the maker of the note. As to his several liability, he was not discharged. The applicable principle is found in Restatement, Contracts:

"§121. (1) Where the obligee of a joint contractual promise discharges a promisor by release, rescission or accord and satisfaction, the other joint promisors are thereby discharged.

"§123. Where the obligee of joint and several contractual promises discharges a promisor by release, rescission or accord and satisfaction, the other promisors are thereby discharged from their joint duty, but not from their several duties, except in the cases and to the extent required by the law of suretyship."

On this point Dean Crane, in his Handbook of the Law of Partnership and Other Unincorporated Associations, §58, pages 252, 253, says:

"In accordance with the law of joint obligations, release by a partnership creditor of a partner discharges the joint liability of the others, . . .

"The release of one jointly and severally liable released the co-obligors from their liabilities at common law [citing Williston, Contracts, §134]. The Contracts Restatement has adopted the view that such a release discharges only the joint liability [citing §123]. Under this view release of a partner, where the obligation is expressly, or by operation of law, joint and several, would not discharge the several liability of other partners."

In conclusion we find that the learned court below kept well within the bounds of its discretionary power in refusing to open the judgment.

Order affirmed.