528 A.2d 198

**Father James MAMALIS**

v.

**ATLAS VAN LINES, INC. McClain Moving Co.**

**Appeal of ATLAS VAN LINES, INC.**

Superior Court of Pennsylvania.

Argued March 10, 1987.

Filed June 24, 1987.

Charles J. Bogdanoff, Philadelphia, for appellant.

Kenneth S. Siegel, Philadelphia, for appellee.

Before McEWEN, MONTEMURO and ROBERTS, JJ.*

ROBERTS, Judge:

The issue in this appeal is whether an agent and its vicariously liable principal are "joint tortfeasors" within the meaning of the Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S.A. § 8321 et seq. Under the Act "joint tortfeasors" are "two or more persons jointly or severally liable in tort for the same injury to persons or property," § 8322. Release of one joint tortfeasor does not discharge other joint tortfeasors unless the release so provides, § 8326. Because we believe that the Legislature intended to keep separate the vicarious liability of a principal from the joint liability of concurrent tortfeasors, we conclude that a vicariously liable principal and agent are not "joint tortfeasors" under the Act. Release of the agent thus precludes further recovery against the principal. We vacate the order and reverse the judgment.

■ Acting under the apparent authority of Atlas Van Lines ("Atlas"),[1] McClain Moving Company ("McClain") con-

---

* This decision was rendered prior to the death of Justice Roberts.

1. The parties apparently agreed that, for the purposes of moving Mamalis' property, McClain was not operating under Atlas' actual authority. McClain's apparent authority to act for Atlas was contested at trial. Viewed in a light most favorable to appellee, the evidence was sufficient to sustain the jury's finding that McClain had apparent authority. Under a contract between the two, McClain was allowed to use the Atlas name for promotional purposes and required to emblazon its equipment with the Atlas logo. True to this agreement, McClain's employees answered the telephone by saying "McClain

tracted with Father James Mamalis to ship his personal belongings from Philadelphia to Fairview, New Jersey. McClain loaded Mamalis' property onto a van, then removed the van to its place of business for delivery the following day. That evening the van caught fire, destroying most of Mamalis' possessions.

Mamalis brought actions in replevin and trespass against McClain and Atlas Van Lines to recover for the damage resulting from the fire. The complaint against Atlas alleged that Atlas was liable through the conduct of its agents, and included a count in assumpsit alleging that Atlas, through its agents, violated its carriage contract.

Three years after the actions were brought, Mamalis settled his claim against McClain for $25,000, and released it from further liability. The written release agreement purported to preserve Father Mamalis' claim against Atlas and provided that "the amount of damages which Mamalis may recover from the other tortfeasors shall be reduced by the pro rata share of the consideration paid under this release." Shortly thereafter, McClain filed for bankruptcy. Atlas then moved for summary judgment, contending that the release of the agent McClain extinguished the entire claim and discharged its liability as principal. It renewed its motion before trial, and again on motion for directed verdict. The trial court disagreed and submitted the case to the jury, which returned a verdict for Mamalis in the amount of $84,402.70.

Appellant once again renewed his claim on motion for post-trial relief. *See* Pa.R.Civ.P., Rule 227.1. Relying primarily on *Bausewine v. Norristown Herald Inc.*, 351 Pa. 634, 41 A.2d 736 (1945), the trial court held that principal and agent are severally liable and thus fall within the Uniform Act's definition of "joint tortfeasor." Since release of one joint tortfeasor does not discharge others under the Act, Atlas' liability to Mamalis was not discharged. The court also analogized to contract law, under which release

Moving Company, Atlas Van Lines" and drove vans with Atlas' logo painted on the side.

of one obligor does not discharge other obligors, even when the co-obligors are principal and agent. *See Joseph Melnick Building & Loan Association v. Melnick*, 361 Pa. 328, 64 A.2d 773 (1949); *Singer v. Ritter*, 167 Pa.Super. 154, 74 A.2d 520 (1950). On the premise that principal and agent were "joint tortfeasors," the trial court reduced the verdict by $25,000, the amount of consideration paid by the agent for the release. *See* 42 Pa.C.S.A. § 8326. It also calculated delay damages and prejudgment interest of $44,382.54 to arrive at a total verdict of $103,785.24.

The doctrine of vicarious liability allows an injured party to impute to a principal the tortious conduct of an agent, *Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 559, 499 A.2d 282 (1985), even though the principal did not commit the act causing the injury. The theory justifying this liability is that between two innocent parties, the risk of injury lies more appropriately with the one who sponsors and benefits from the actions of the actual tortfeasor, rather than with the one injured by those actions. *See Aiello v. Ed Saxe Real Estate, Inc., supra.* The vicarious nature of a principal's liability "does not mean that the master in such case is only secondarily liable. He is made primarily liable and the injured party may sue either (principal or agent) as he elects," *Betcher v. McChesney*, 255 Pa. 394, 396, 100 A. 124 (1917).[2] Still the agent is ultimately responsible for his own conduct, and the law ameliorates the harshness of the vicarious liability doctrine by allowing the principal to seek indemnity from the agent. *See Builders Supply Co. v. McCabe*, 366 Pa. 322, 326, 77 A.2d 368 (1951); *Ragan v. Steen*, 229 Pa.Super. 515, 526, 331 A.2d 724 (1974).

A claim of vicarious liability depends on the life of the claim from which it derives. *See East Broad Top Transit Co. v. Flood*, 326 Pa. 353, 355–56, 192 A. 401 (1937); *Skalos v. Higgins*, 303 Pa.Super. 107, 113, 449 A.2d 601

---

2. *Betcher* was cited with approval in *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 510 Pa. 1, 22, 507 A.2d 1 (1986).

(1982). Termination of the claim against the agent extinguishes the derivative claim against the principal. Moreover, a claim of vicarious liability is indivisible from the direct claim since both are based on the act or acts of only one tortfeasor. In *Betcher v. McChesney, supra,* our Supreme Court recognized the derivative, indivisible liability of a principal for the tortious conduct of its agent. The Court held that a plaintiff who obtains a judgment against an agent may not recover further from a principal whose liability is merely vicarious:

> If (the agent) answered over to the plaintiff for his negligence, that put an end to the defendant's liability, for plaintiff was entitled to nothing but compensation for his injuries, once for all. ... [I]n this case the law gives the right of election, the party may sue either master or servant, the one for actual negligence, the other for imputed negligence, but it by no means follows that if he sue the one and obtain judgment that he can afterwards sue the other on the ground that he had not realized on the judgment obtained.

The rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor. Upon a showing of agency, vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover. If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal. If the agent is available or has means to pay, invocation of the doctrine is unnecessary because the injured party has a fund from which to recover.

 The system of contribution among joint tortfeasors, of which the Uniform Act's apportionment rules are a key component, has arisen completely apart from the system of vicarious liability and indemnity and meets an entirely distinct problem: how to compensate an injury inflicted by the

acts of more than one tortfeasor.[3] Unlike the liability of a principal, the liability of a joint tortfeasor is direct (because the tortfeasor actually contributed to the plaintiff's injury) and divisible (since the conduct of at least one other also contributed to the injury). *Builders Supply Co. v. McCabe, supra* is a classic example of the difference between the two systems. There, a northbound truck and an eastbound car entered an intersection almost simultaneously. The truck swerved to avoid a broad-side collision with the car, only to proceed head-on into an oncoming vehicle. After the oncoming driver obtained a judgment against the owner of the northbound truck, the Supreme Court rejected the owner's effort to get indemnity from the eastbound driver. The Court distinguished a principal's vicarious liability for the acts of his agent, then explained:

> In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of

---

**3.** The separateness of the two systems is supported by the Uniform Act itself, which "does not impair any right of indemnity under existing law," 42 Pa.C.S.A. § 8323. Appellee argues that the General Assembly's failure to adopt a recommended amendment to this subsection implicitly acknowledges the existence of a hybrid compensation system which would allow both contribution and indemnity in certain situations. We refuse to infer the legislature's intent to so dramatically revise the tort compensation system from its mere failure to act. Moreover, the amendment merely purports to clarify the distinction between contribution and indemnity, not to alter the existing separate systems or to provide additional rights. *See* Commissioners' Comment to Uniform Contribution Among Tortfeasors Act (U.L.A.) § 1(f); *Craven v. Lawson,* 534 S.W.2d 653, 656 (Tenn.1976).

There would be no recovery in this case even if we were inclined to find that the legislature has authorized combination of the contribution and indemnity systems. Plaintiff argues that McClain's pending bankruptcy at the time of the release left him with a "Hobson's choice," since the automatic stay provisions of the Federal Bankruptcy Code, 11 U.S.C. § 362, would have precluded him from proceeding to trial and obtaining a judgment against McClain. The existing rules, without adjustment, protect plaintiff's interests, since appellee could have obtained full judgment against Atlas, without regard to McClain's financial status, and allowed Atlas to contemplate the effect of McClain's bankruptcy in its cross-claim for indemnity.

indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other.

366 Pa. at 328, 77 A.2d 368. Clearly, the northbound and eastbound drivers were "joint tortfeasors" and the only remedy available between them would be contribution.[4]

 In this case, Atlas committed no tort, but was liable only because the law imputed to it McClain's tortious conduct. When plaintiff released McClain, his derivative claim against Atlas was thus extinguished. The written release agreement, to which Atlas was not a party, is thus incapable of reserving claims against a vicariously liable principal. Appellee points out that in *Betcher v. McChesney, supra,* the Court allowed discharge of the principal only after a judicial determination of plaintiff's damages. But survival of a claim against a principal turns merely on whether the underlying claim against the agent was terminated, not on how it was terminated or on whether a court has assessed the adequacy of compensation. Even among joint tortfeasors, our Supreme Court recently found no basis "in reason or experience" for the assumption "that a jury verdict more accurately measures the tortfeasor's obligation than that which is agreed upon between the parties," *Charles v. Giant Eagle Markets,* 513 Pa. 474, 522 A.2d 1, 3 (1987).

Like the north and east bound drivers in *Builders' Supply,* the defendants in *Bausewine v. Norristown Herald, Inc., supra* were "joint tortfeasors" despite the existence of an agency relationship between them. *Bausewine* was a libel action against a corporate defendant and its president in which our Supreme Court held that discontinuance against the president did not discharge the corporation. The Court wrote that "Norristown Herald, Inc. was the

**4.** Unfortunately for the northbound driver, *Builders Supply* was decided under Ohio law which at that time recognized no right of contribution between joint tortfeasors. The northbound driver was thus left without remedy to reduce the judgment against him, 366 Pa. at 335–36, 77 A.2d 368. *Cf.* Ohio Rev.Code Ann. §§ 2307.31, 2307.32.

master and Strassburger, its servant. With the defendants in that relationship, it was a mistake of law for the plaintiff to treat them as joint tortfeasors. Their torts were several," 351 Pa. at 638, 41 A.2d 736. Unlike Father Mamalis' claim, Bausewine's claim against Norristown Herald was not based on vicarious liability, but rather on the corporation's own direct, injury-causing conduct.[5] Both Strassburger and the newspaper published defamatory material about Bausewine. When Bausewine discontinued Strassburger, a compensable injury caused by the corporate defendant still remained. But when Mamalis released McClain, no compensable injury remained. Thus, the torts of master and servant in *Bausewine* were indeed "several," simply because each committed a tort. But this record reveals no evidence of an affirmative act which would make this principal's liability anything other than vicarious. The weight of any dicta in *Blum v. Goldman,* 366 Pa. 527, 531, 79 A.2d 248 (1951) falls under the same distinction. *See also East Broad Top Transit Co. v. Flood; Skalos v. Higgins, supra.*

The derivative nature of a principal's liability for the torts of his agent makes inapposite the trial court's analogy to the law of contracts. The contracts rule does not discharge co-obligors upon the release of one obligor. Each obligor under a contract has independently consented to the obligation. Thus, unlike a tort claim against a principal, a contract cause of action against an individual obligor does not depend on the status of a separate claim.

Moreover, the rule allowing a contract obligee to proceed against an agent for an undisclosed principal after disclosure and discharge of the principal stems from a rationale wholly unrelated to the doctrine of vicarious liability. As the court in *Melnick, supra* made clear:

A person who enters into contractual obligations with an agent, where the agent is acting for an undisclosed princi-

---

**5.** Indeed, Norristown Herald recognized its joint responsibility and unlike the northbound driver in *Builders' Supply* who incorrectly sought indemnity, requested only contribution from Strassburger, 351 Pa. at 637, 41 A.2d 736.

pal, may enforce his claim against the agent *because he has acted upon the agent's credit.* As this Court said in *Beymer v. Bonsall,* [79 Pa. 298 (1875)] *supra,* p. 300: 'Undoubtedly an agent who makes a contract in his own name without disclosing his agency is liable to the other party. The latter acts upon his credit and is not bound to yield up his right to hold the former personally, merely because he discloses a principal who is also liable.'

361 Pa. at 338, 64 A.2d 773.

By providing that the release of one joint tortfeasor does not discharge other joint tortfeasors unless the release so provides, the Uniform Act reverses a common law rule which discharged all joint tortfeasors upon the release of one of their number. The discharge of Atlas here does not follow from this rule, but from well-settled principles of agency and tort law. The concept of joint tortfeasorship, in either common law or statutory form, does not apply to claims involving a principal's vicarious liability for the torts of its agent. The order of the court of common pleas is vacated and its judgment reversed.[6] Jurisdiction relinquished.

6. Our disposition makes it unnecessary to reach the other issues raised.