In re Clara LITTLES, Debtor.

Clara LITTLES, Plaintiff,

v.

Arnold R. LIEBERMAN, Defendant.

In re Mary CROSSLEY, Debtor.

Mary CROSSLEY, Plaintiff,

v.

Arnold R. LIEBERMAN, Defendant.

Bankruptcy Nos. 87–000925, 87–023945.
Adv. Nos. 87–02475, 87–05695.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 12, 1988.

Mary Jeffrey, Margaret E. Taylor, Philadelphia, Pa., for debtor in Littles proceeding.

David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for debtor in Crossley proceeding.

Curtis P. Cheyney, III, Anne Matchulet, Philadelphia, Pa., for defendant.

Christine Shubert, Camden, N.J., Trustee in Littles case.

John Judge, Philadelphia, Pa., Trustee in Crossley case.

## RECOMMENDED OPINION CONTAINING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAVID A. SCHOLL, Bankruptcy Judge.

We consider herein together two separate adversary proceedings instituted by Chapter 7 Debtors against the same defendant-attorney based upon the attorney's alleged dispatch of the same letter to recover damages under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter referred to as "FDCPA"), and Pennsylvania state Debt Collection Trade Practices Regulations, 37 PA. CODE § 303.1, et seq. (hereinafter referred to as "DCTPR"). As we conclude that these matters are non-core and that the Defendant does not consent to our determining same, we have presented a Recommended Opinion, including Proposed Findings of Fact and Conclusions of Law, as required by 28 U.S.C. § 157(c)(1).

In *Littles,* we recommend denial of any relief to the Debtor-plaintiff because no evidence was presented to rebut the testimony of the Defendant and the manager of the office of a loan company on whose behalf the letter was dispatched that the loan company had sent out the letter itself, without the authority of the attorney. However, in *Crossley,* no comparable defense appears, and we therefore recommend that the attorney be adjudged liable for penalties totalling $500.00 under the FDCPA and the DCTPR.

The Debtors, widows aged 57 years (Littles) and 70 years (Crossley), filed Chapter 13 bankruptcy cases on January 6, 1987 (Littles), and May 15, 1987 (Crossley). Both cases were converted to Chapter 7 cases, *Littles* on August 20, 1987, and *Crossley* on December 4, 1987.

Littles instituted her adversary proceeding against ARNOLD R. LIEBERMAN, ESQUIRE, a practicing attorney (herein "the Defendant"), on March 12, 1987, and Crossley followed suit on June 12, 1987. Each proceeding followed a tortuous path prior to its submission to us for disposition.

In *Littles,* the Defendant filed a Motion to Dismiss the case, on the ground that it was not within our jurisdiction, on the basis of 28 U.S.C. § 157(b)(5), which requires that personal injury claims be tried in the district court. On July 7, 1987, we issued a brief Opinion, reported at 75 B.R. 240, denying the motion, on the ground that the modest statutory damage claims pursued by the Debtor were not within the scope of "personal injury tort and wrongful death claims" contemplated by 28 U.S.C. § 157(b)(5).

After several continuances by agreement of counsel, the matter was tried on September 8, 1987. The witnesses testifying were the Debtor, the Defendant, and Ronald Price, a manager of the office of the creditor employing the Defendant, Fleet Consumer Discount Company (hereinafter referred to as "Fleet"). When briefing was about to commence, Littles filed a motion to reopen the record to allow addition thereto of certain answers to Requests for

Admission and Interrogatories. On November 25, 1987, we granted the motion with the caveat that the Defendant could present supplemental testimony at the hearing on December 15, 1987. Ultimately, the Defendant chose not to present further testimony and a briefing schedule was established which was completed on January 22, 1988.

The proceedings in the *Crossley* case were even more unusual. When the Defendant failed to answer the Complaint, a default was entered on July 24, 1987, and a hearing on the issue of damages only was scheduled on August 12, 1987. Thereafter, Crossley filed a motion for a default judgment which the Defendant, suddenly springing into action, opposed and to which he attached a proposed Answer. We ultimately vacated the default and, in an Order of September 15, 1987, directed the Defendant to answer the Complaint and outstanding discovery prior to a trial scheduled on October 13, 1987.

The trial was continued to November 10, 1987, in order that the Defendant could take the disposition of Crossley. This disposition took place on October 30, 1987, in Crossley's home, from which Crossley claimed, for medical reasons, she could not venture for the disposition. Just prior to trial, Crossley moved to admit the deposition transcript into the record in lieu of her live testimony, contending that she could not attend trial for medical reasons. On November 10, 1987, we granted that motion, subject to the Defendant's right to take a supplemental deposition of Crossley on or before November 30, 1987, and scheduled the remainder of the trial for December 15, 1987.

On the latter date, the Defendant, to the surprise of Crossley's counsel, failed to appear. We therefore continued the trial until January 6, 1988, allowing either party to subpoena the Defendant to appear thereat. After initially agreeing to produce the Defendant, his counsel withdrew this offer in a letter dispatched just prior to the New Year's weekend, and Crossley's counsel was unsuccessful in attempts to subpoena the Defendant thereafter. On January 6,

1988, the Defendant again failed to appear. At that time, in lieu of our offer to continue the matter again and direct the Defendant to appear, Crossley's counsel offered into evidence certain responses to discovery, a portion of the *Littles* transcript, and a certified copy of a listing of all actions filed by the Defendant in the Court of Common Pleas of Philadelphia County from June 1, 1986, through December 30, 1987. All of the exhibits were admitted, the latter two over the Defendant's objection. Although we entered an Order contemplating receipt of the *Crossley* briefs coinciding with those prepared in *Littles,* the Defendant was thereafter granted a brief extension to make his submission in *Crossley,* and all filings were made by January 26, 1988.

Because we decide that neither proceeding is a core proceeding, we are obliged to submit proposed Findings of Fact and Conclusions of Law to the district court as to each case separately. We are including these Proposed Findings and Conclusions in the text of this "Recommended Opinion," which concludes with a Discussion of issues common to both cases.

## A. PROPOSED FINDINGS OF FACT— LITTLE CASE

1. In September, 1986, Littles received a letter dated September 17, 1986, on the letterhead of the Defendant, reading as follows:

CLARA LITTLES
2756 N. HUTCHINSON ST.
PHILA., PA 19133
PLAINTIFF: FLEET CONS. DISC. CO.
ACCOUNT NO.: # 26549752
AMOUNT DUE: $207.50

Dear Sir and/or Madam:

The above matter has been referred to me for collection. I am obligated to demand immediate payment of the full amount of the plaintiff's damages and costs as stated above.

Unless I receive payment in full within one week from the date of this letter, I will be compelled to proceed with suit against you. This can result in the listing of your property, either Real Estate

or Personalty, for forced Sale by the Sheriff, after appropriate legal proceedings have been concluded.

Such action will result in additional expense to you, for the Court fees and Sheriff's costs.

Full payment should be in my hands within one week. You may telephone me for additional information.

> Very truly yours,
> /s/ Arnold R. Lieberman
> Arnold R. Lieberman, Esq.

ARL:dl

Date: 9–17–86

cc Manager: RON PRICE

Phone No.: 592–1960

2. At that time, Littles was delinquent in payments on a loan from Fleet secured by a mortgage on her residence.

3. On September 24, 1986, Ronald Price of Fleet sent an even stronger letter to Littles, stating, *inter alia,* that it was suggested that she remove all of her personal property from the premises because she would be evicted in an impending foreclosure sale of her home.

4. Littles is a 57–year–old widow who attended school only through tenth grade in North Carolina and whose husband had recently expired in November, 1986. Littles testified that she believed that, as a result of these letters, Fleet was suing her and that she would lose her home. She testified that she "was very upset," cried, couldn't eat, couldn't sleep, lost eleven pounds in the next two or three months, and tried unsuccessfully to obtain financial assistance from her three children and a friend.

5. The Defendant testified that he had been a practicing lawyer for twenty-seven (27) years, having represented Fleet for ten (10) years. He further stated that he had represented several other loan companies in collection activities, wherein he had utilized the letter quoted in paragraph one for the past ten or twelve years. Finally, he testified that the letter had been prepared after consultation with attorneys from the office of Littles' counsel.

6. The Defendant also testified that the signature on the letter was not his, and that he had never authorized the dispatch of this letter to Littles.

7. The Defendant and Ronald Price both testified that, on one occasion, due to his own secretarial problems, the Defendant had come to the Fleet office with several copies of his letter to be sent to particular Fleet customers, not including Littles. Mr. Price opined that a Fleet employee, without authority to do so, had made an extra copy of the letter, signed the Defendant's name to it, and sent it to Littles.

8. Mr. Price stated that Fleet had utilized the letter in certain cases in the past with the Defendant's authority, but that Fleet had "overstepped its bounds" in sending the letter to Littles without the Defendant's permission.

9. The foregoing testimony of the Defendant and Mr. Price was not established to be other than factual. Therefore, though with some misgivings, it is credited by the court.

10. After the institution of this adversary proceeding, Littles instituted a separate adversary proceeding, at Adv. No. 87–0420S, against Fleet, which did not include the Defendant as a party, apparently based, *inter alia,* on illegal debt collection practices, including the dispatch of the letter of September 24, 1986, but not including the dispatch of the letter of September 17, 1986, in issue here.

11. On July 16, 1987, Littles and Fleet entered into a Settlement Agreement of Adv. No. 87–0420S, thereafter approved by this court, in which Littles released Fleet from liability for all claims set forth in that proceeding. The Agreement made no mention of either the instant proceeding or the Defendant.

**B. PROPOSED CONCLUSIONS OF LAW—LITTLES CASE**

1. The instant proceeding is a non-core, related matter. Therefore, we properly heard the matter, but must submit proposed findings of fact and conclusions of law to the district court rather than deter-

mining it ourselves. *See* 28 U.S.C. § 157(c)(1).

2. The Defendant is a "debt collector," subject to potential liability under the FDCPA and DCPTR for dispatch of the letter in issue.

3. The Settlement Agreement in Adv. No. 87–0420S did not release the Defendant from liability in this proceeding, since it related to matters distinct from the letter of September 17, 1987, including dispatch of a separate letter not sent or composed by the Defendant.

4. However, given our crediting the testimony of Mr. Price and the Defendant that the latter did not sign or send out the letter and was not aware of its dispatch other than to specific designated consumers, which did not include Littles, the Defendant is not liable to Littles as either a "debt collector" or a "form supplier" as to the letter of September 17, 1986.

## C. PROPOSED FINDINGS OF FACT— CROSSLEY CASE

1. In August, 1986, Crossley received a letter of August 4, 1986, on the letterhead of and sent by the Defendant, containing the same text as the letter of September 17, 1986, sent to Littles.

2. Crossley had not received any prior letters from the Defendant or Fleet concerning her account, although, at that time, Crossley was also delinquent in payments on a loan from Fleet secured by a mortgage on her home.

3. Crossley is a 70–year–old widow whose principal employment, after graduation from high school, was as a waitress. Crossley has a severe breathing problem which renders it very difficult for her to leave her home, although she has shunned consultation of any physician about this problem for many years.

4. The letter, which Crossley interpreted as a threat "to sheriff sale [her] house," allegedly "scared the daylights out of [her]" and caused her to cry, not eat, not sleep, and reportedly lose twenty-five (25) pounds.

5. Upon receipt of the letter, Crossley called one of the numbers on it and spoke to an unidentified man who advised her, in a kidding way, to sell her home and to either move to an apartment or become a bag lady, and stated that she didn't need a lawyer to resolve her problem.

6. Because she believed that it was necessary for her to cash in her pension benefits from her place of employment to pay Fleet to retain her home, Crossley terminated her most recent part-time employment in food service with the School District. She therefore attributes her differences with Fleet as responsible for her leaving her job.

7. Given the cold record, we believe that Crossley did suffer some emotional trauma as a result of the letter, but that this trauma was not extensive. She thus suffered her actual damages valued at $100.00.

8. The Defendant filed one hundred and ninety-five (195) lawsuits in the Philadelphia Court of Common Pleas between June 1, 1986, and December 23, 1987, approximately one hundred and seventy-five (175) of which were mortgage foreclosure cases or other collection suits on behalf of loan companies.

## D. PROPOSED CONCLUSIONS OF LAW—CROSSLEY CASE

1. Paragraphs one and two of the *Proposed Conclusions of Law—Littles Case*, page 672 *supra*, are incorporated herein by reference.

2. The letter in issue can reasonably be interpreted to threaten that a lawsuit will be brought against the recipient if payment in full is not made within one week, and was intended to convey such a threat. Since filing a lawsuit in such short order was not actually intended by the Defendant and was action which could not legally have been taken, as a thirty-day pre-suit notice was required under state law, dispatch of the letter violated 15 U.S.C. § 1692e(5) of the FDCPA and 37 PA. CODE § 303.3(14) of the CDPTR.

3. The letter failed to contain the written validation notice required by 15 U.S.C.

§ 1692g of the FDCPA and is therefore violative of that statutory provision as well.

4. No other asserted violations of the FDCDPA or the CDRTR are proven as actionable on this record.

5. The Defendant is liable to Crossley for $100.00 actual damages pursuant to 15 U.S.C. § 1692k(a)(1); additional damages of $100.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); treble her actual damages, or $300.00, for violation of the CDPTR pursuant to 73 P.S. § 201–9.2(a); and reasonable attorney's fees to Crossley's counsel pursuant to 15 U.S.C. § 1692k(a)(3) and 73 P.S. § 201–9.2(a).

## E. DISCUSSION

1. This Matter is a Non–Core, Related Proceeding Which This Court Must Hear and Thereafter Submit Proposed Findings of Fact and Conclusions of Law to the District Court for Entry of an Order.

■ The easiest issues to resolve in these proceedings are the so-called "jurisdictional issues" raised by the Defendant, in which the Defendant appears to suggest that, since this matter is not a "core proceeding," it may properly be classified as an "unrelated" proceeding which this court lacks jurisdiction to hear.

We believe that the Defendant's unanswered assertion that this is not a core proceeding is correct. *See In re A.I.A. Industries, Inc.*, 75 B.R. 1013, 1016–20 (Bankr.E.D.Pa.1987); and *In re Windsor Communications Group, Inc.*, 67 B.R. 692 (Bankr.E.D.Pa.1986). Nevertheless, as our decision in *Windsor*, following the clear language of 28 U.S.C. § 157(c)(1), points out, 67 B.R. at 673, this conclusion does *not* mean that we cannot "hear" the proceeding, but only that we cannot "hear and determine" it, and thus must submit our result to the district court in the form of proposed findings of fact and conclusions of law. Despite the Defendant's somewhat belated invocation of this issue at trial in *Littles* and not until the briefing stage in *Crossley*, we nevertheless con-conclude that the issue was not waived and that the Defendant did not consent to our determin-

ing the matter. *Compare In re CG Realty Investment, Inc.*, 79 B.R. 249, 251 (Bankr. E.D.Pa.1987); and *In re DSC Industries, Inc.*, 79 B.R. 244, 247 (Bankr.E.D.Pa.1987). Hence, although we fail to see what benefit inures to the Defendant from successfully raising the issue, *see A.I.A. Industries, supra*, 75 B.R. at 1017, we are compelled to recognize the Defendant's right to do so.

However, the Defendant goes further and submits the purely frivolous contentions that this proceeding is not a "related" matter and that somehow the actions of the Debtors in bringing the action here deprived him of his right to a jury trial. First, we point out that the Defendant had, at its disposal, the right to timely move the district court to withdraw the reference of this proceeding to this court, pursuant to 28 U.S.C. § 157(d), if that was his pleasure. Of course, by now, the time to do so has passed. Secondly, it seems clear that, had the Defendant made a timely demand for a jury trial, which he failed to do at any time, and to which he may well have been entitled, *see Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830 (11th Cir.1982), he would have obtained same, either here or in the district court. *See In re Globe Parcel Service, Inc.*, 75 B.R. 381, 385 (E.D. Pa.1987). Hence, it was the Defendant's own failures to act that resulted in a nonjury trial in this court.

The Defendant's reasoning as to why these proceedings were not "related" to the Debtors' respective bankruptcy cases seems to have some vague connection with his observation that these cases are no-asset Chapter 7 cases, and hence any recovery by the Debtors is unlikely to end up in the pockets of their respective creditors. However, this contention overlooks the fact that the Debtors' causes of action are property of their respective estates, given the broad scope of that term, even if all of the amounts recovered by the Debtors are exempt. *See* 11 U.S.C. §§ 541(a)(1), (a)(7); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983); *In re Temp–Way Corp., Dynaforce Corp. v. Temp-way Corp.*, 80 B.R. 699, 702–03 (Bankr.E.D.Pa.

1987); *In re Whitt,* 79 B.R. 611, 615 (Bankr.E.D.Pa.1987); and *In re Mason,* 69 B.R. 876, 882–84 (Bankr.E.D.Pa.1987).

The Third Circuit Court of Appeals has reiterated in *In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985); and *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), that any proceeding the outcome of which *"could conceivably have any effect on the estate being administered in bankruptcy"* (emphasis in both originals) is a "related" proceeding. *See also A.I.A. Industries, supra,* 75 B.R. at 1019. Since the claims in issue are property of the Debtors' respective estates, they are, under this authority, plainly "related" proceedings which we are required to hear.

The Defendant cites elsewhere in its Brief the one decision directly on point on this issue, *In re Schrimpsher,* 17 B.R. 999, 1004–06 (Bankr.N.D.N.Y.1982), which resolves the issue against the Defendant. There, even though the court recognized that Chapter 7 debtors were not litigating FDCPA and related state law claims for the benefit of distribution to unsecured creditors in the proceeding in issue, the matter was held to be related to the bankruptcy case and, under the provisions of the pre–1984–amendments Bankruptcy Code, subject for determination by the Bankruptcy court.[1]

The Defendant again raises, in *Crossley,* the argument that 28 U.S.C. § 157(b)(5) deprives this court of jurisdiction, which we rejected in our previous Opinion in *Littles.* See page three *supra.* No authority contrary to our result in *Littles* is cited which would cause us to reconsider that decision.

It is therefore manifestly clear that this matter is a non-core, related proceeding which we can and will hear and the district court will determine upon our within submission.

**2. Since the Defendant Engages in Debt Collection as Part of his Regular Practice, he is a "Debt Collector."**

■ The principal matter of substance presented by both proceedings is whether the Defendant has violated the FDCPA as to either Debtor. The first FDCPA issue is whether the Defendant is a "debt collector," as defined in 15 U.S.C. § 1692a(6) as follows:

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... .

Prior to an Amendment contained in Pub. L. 99–361, and effective on July 9, 1986, attorneys were expressly excepted from this definition by the terms of former § 1692a(6)(F). *See* R. Hobbs, *Attorneys Must Now Comply With Fair Debt Collection Law,* X PA. L.J.–RPTR., No. 46, pg. 3 (Nov. 21, 1987); and M. Sweig, *Guidelines for Consumer Debt Collection by Attorneys Under the 1986 Amendment to the Fair Debt Collection Practices Act,* 21 NEW ENGLAND L.REV. 697, 698 (1987).

Although the record in both cases shows a considerable volume of debt collection activity by the Defendant, as described below, the Defendant contends that the Debtors failed to meet their burden of establishing that he is a "debt collector" because the Defendant testified that he has been engaged in the "general practice of law" for many years and, at least on some occasions, represented debtors as well as creditors. However, the Defendant fails to note that he has represented Fleet for ten years and is and was, in addition, counsel for other loan companies in collection activities. In response to questioning from his own

---

1. The Defendant cites no authority which supports his position on this point, referencing the three following clearly-distinguisible results: (1) *In re Cannon,* 51 B.R. 349 (Bankr.E.D.Tenn. 1985) (court determined that proceeding was non-core, but did not dismiss matter, precisely as we do here); (2) *In re Ennis,* 50 B.R. 119 (Bankr.D.Nev.1985) (former Chapter 7 debtor brought an action against a creditor bureau after his case was closed); and (3) *In re Dickenson Lines, Inc.,* 47 B.R. 653 (Bankr.D.Minn.1985) (proceeding involved controversy between two non-debtors).

counsel in *Littles,* he testified that credit collection work was "a principal part" of his business.

We reaffirm the correctness of admitting the certified copies of the listing of the legal actions commenced by the Defendant between June, 1986, and December, 1987, in Philadelphia County into the record. Despite the Defendant's contention that there is no authority for admission of same, we note Federal Rule of Evidence 1005, which allows the admission of certified copies of any official records, which surely would embrace records of court proceedings. This compilation reveals a large volume of collection work—about one hundred (100) lawsuits annually on behalf of loan companies. These records quantify the volume of a collection practice which the Defendant, rather evasively, refused to proffer at the *Littles* hearing.

Addressing the "debt collector" definition in his article, Mr. Hobbs states, *supra,* at 3–4, as follows:

> There is no question that FDCPA applicability is not limited just to attorneys who make debt collection the focus of their practices. The definition of "debt collector" includes any attorney "who regularly collects or attempts to collect, directly or indirectly [consumer] debts owed or due or asserted to be owed or due another." The key to this definition is the concept of engaging in collection activities "regularly."

> Both the legislative history of this amendment and the case law regarding similar provisions in the Federal Consumer Credit Protection Act demonstrates that any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA. Both sides in the floor debate conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also to those "who collect on an occasional basis" and "the small law firm which

collects debts incidentally to the general practice of law."

In his article, Mr. Sweig quotes directly from the most cogent legislative history of the FDCPA, Senate Report 95–382, 95th Cong., 1st Sess. 3 (1977), U.S.Code Cong. & Admin.News 1977, pp. 1695, 1697, in concluding as follows, at 21 NEW ENGLAND L.REV. at 699:

> Congress has not defined "regularly," but the legislative history indicates that attorneys must interpret this term broadly:

> > "[t]he requirement that debt collection be done 'regularly' would exclude a person who collects a debt for another in an isolated instances, but would include those who collect [debts] for others in the regular course of business."

Thus, any law firm collecting debts for its clients on more than an "isolated" basis (which theoretically could mean *once*) probably falls within the language of the statute.

Clearly, the Defendant here engages in collection activity more than "a handful of times per year," more than "on an isolated basis," and has done so much more than once in his legal career. His long retention by Fleet alone would in itself clearly be sufficient to meet the FDCPA definition. We therefore have no hesitancy in concluding that the Defendant is, by any definition of the term, a "debt collector," even if we excluded the statistical data relating to his practice which we admitted in *Crossley.*[2]

3. The Dispatch of the Letter in Issue Violated §§ 1692e(5) and 1692g of the FDCPA.

The second issue is whether the Defendant engaged in activity violative of the FDCPA in dispatching the letter in issue. Admittedly, he did dispatch the letter to Crossley and a determination that the letter is per se not violative of the FDCPA would render further consideration of the *Littles* matter unnecessary.

---

**2.** We do not rely on the Defendant's initial proposed Answer to the Complaint filed with his Answer to the Motion for a Default Judgment in which the Defendant admitted that he engaged in the business of collecting debts. The record is clear that he does so in any event.

Given that the letter received by each of the Debtors was precisely the same, it is not surprising to observe that the Debtors claim certain common FDCPA violations. Three common violations asserted are as follows:

1. The letter designates Fleet as the "plaintiff" and makes reference to "damages and costs," which is claimed to suggest that a lawsuit is already pending when one is not. This is allegedly violative of 15 U.S.C. § 1692e(2)(A), which prohibits "[t]he false representation of ... the character, amount, or legal status of the debt."

2. The letter states that, if the Debtor fails ro remit payment in full, the Defendant will be "compelled" to bring a suit within a week, which did not occur and could not legally have occurred in light of the fact that applicable state law, 41 P.S. § 403(a), requires a thirty-day notice and right to cure prior to the institution of suit on a debt which is, like that owed by both Debtors here to Fleet, secured by a residential mortgage. This aspect of the letter is said to violate 15 U.S.C. § 1692e(5), which prohibits a "threat to take any action that cannot legally be taken or that is not intended to be taken."

3. Although the letter was the Defendant's initial communication with the Debtors, it failed· to include the "validation of debts" information required in a first communication to a consumer by a debt collector pursuant to 15 U.S.C. § 1692g.

■ There seems no question that letters did not contain the "validation of debts" information. Hence, this violation is plain on the face of the letters, as in, e.g., *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777–78 (9th Cir.1982); *West v. Costen*, 558 F.Supp. 564, 580 (W.D.Va.1983); *Harvey v. United Adjusters*, 509 F.Supp. 1218, 1221 (D.Ore.1981); and *Carrigan v. Central Adjustment Bureau, Inc.*, 502 F.Supp. 468, 470 (N.D.Ga.1980).

The other violations, not so clear on the face of the letters as the § 1692g violation, require interpretation as to whether the letter is misleading in its representations concerning the collection of the debts. The standard to be utilized, as adopted by this court in *Catherman v. Credit Bureau of Greater Harrisburg*, 634 F.Supp. 693, 695 (E.D.Pa.1986), requires us to "assess the terms of the impression likely to be left upon the unsophisticated consumer sought to be protected by the Act." *Accord, Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174–75 (11th Cir.1985); and *United States v. Central Adjustment Bureau, Inc.*, 667 F.Supp. 370, 375 (N.D.Tex.1987)[3] and *Bingham v. Collection Bureau, Inc*, 505 F.Supp. 864, 870 (D.N.D.1981).

■ Applying this test, we believe that the letter clearly does convey the impression, and is meant to convey the impression, that a lawsuit will be instituted in a week unless full payment is made immediately. No such action was commenced against either Debtor, and, as the Debtors point out, no such action could have been commenced in this time, in light of the presence of 41 P.S. § 403(a). We note that the "one week" deadline in which consequences will ensue is reiterated twice in the letter, conveying the distinct impression that the Defendant will "proceed with suit" if "full payment" is not made within that time-span.

■ On the other hand, we reject the Debtors' suggestion that the use of certain terms in the letter such as "plaintiff" and "damages and costs" conveys the impression, even to an unsophisticated consumer, that suit has already been commenced. Moreover, such an impression (suit has aleady begun) is inconsistent with the impression conveyed that suit *will* begin in a week if full payment is not made.

Our conclusion that the false threat to file suit within a week is actionable is sup-

**3.** In his *Crossley* Brief, as opposed to his *Littles* Brief, the Defendant argues that we should utilize the "reasonable consumer" standard allegedly promulgated in *Wright v. Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591 (N.D.Ga.1981). Actually, the *Wright* eschews a standard other than the "least sophisticated reasonable consumer standard, which seems very close if not identical to the standard enunciated in *Catherman*." *Id.* at 598–600. In any event, the late *Jeter* decision effectively set the standard for the Circuit in which the *Wright* court is located.

ported by, again, ample authority. *See Jeter, supra,* 760 F.2d at 1171, 1176 (statement that debt collector would recommend legal action in five days when no action was taken in that time held actionable); *Baker,* 677 F.2d at 776, 779 (debt collector's statement that it would "proceed with collection procedures" if payment was not made misrepresented that legal action not taken would follow); *Trans World Accounts, Inc. v. Federal Trade Comm'n,* 594 F.2d 212, 214, 216 (9th Cir.1979) (statement that legal action may be initiated immediately gave false impression that action would inevitably follow); and *Thomas v. National Business Assistants, Inc.,* C.A. No. N–82–469, slip op. at 2, 3 (D.Conn. Oct. 3, 1984) (debt collector threatened imminent lawyer referral or dispatch of a road adjuster which was not actually intended). Of particular pertinency is the decision in *Dixon v. Brooks,* 604 S.W.2d 330, 334 (Tex. Civ.App.1980), where a threat of suit prior to a notice comparable to that required by 41 P.S. § 403(a) to be an unfair collection practice under a comparable Texas law. Thus, we find that the letter violated the FDCPA in two respects.

4. The Alleged Telephonic Abuse of Crossley is not Actionable Under § 1692d.

■ There is another allegation in *Crossley,* arising from the telephonic statements to Crossley that she should rent an apartment or become a bag lady, and did not need to consult an attorney, which is said to constitute harassment or abuse, per 15 U.S.C. § 1692d. However, the inability of Crossley to identify the Defendant as the party to whom she spoke and her own statement that she was "kidding around" when the statement was made and did not apparently take the statements seriously, cause us to reject a finding of an FDCPA violation on that score.

5. The Settlement Agreement and Release in Adv. No. 87–0420S Does Not Release the Defendant from Liability in this Matter.

■ The *Littles* proceeding presents, however, several special problems. First is the claim that the release of Fleet in settlement of Adv. No. 87–0420S released the Defendant from liability. We reject this argument because it is apparent that this proceeding involves a totally separate and distinct occurrence from that referenced in Adv. No. 87–0420S, and there is no indication whatsoever in the Settlement Agreement that the parties meant to embrace any separate occurrences in the release.

Our beginning point for analysis on this point is the principle that releases are strictly construed to cover only the particular matters which they expressly address. *See, e.g., In re Vacuum Cleaner Corp. of America,* 40 B.R. 515, 516–17 (Bankr.E.D. Pa.1984); *Wenger v. Ziegler,* 424 Pa. 268, 271–72, 226 A.2d 653, 654–55 (1967); and *Furtek v. West Deer Township,* 191 Pa.Super. 405, 156 A.2d 581, 585–86 (1959). There is no indication that the release executed in connection with Adv. No. 87–0420S was intended, by either party, to include any claims other than those raised in that proceeding. That proceeding did not include any claims based on the letter of September 17, 1986, which is the sole subject of this proceeding. Construing the release strictly would hence cause us to conclude that it did not cover claims based on the letter in issue.

Secondly, we question the Defendant's contention that Fleet and he were joint tortfeasors. To be such, their conduct would have had to have caused " 'a single harm which cannot be apportioned,' " *Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22, 25 (3d Cir.1986) (quoting *Capone v. Donovan,* 332 Pa. Super. 185, 189, 480 A.2d 1249, 1251 (1984), which was in turn quoting RESTATEMENT (SECOND) OF TORTS, § 879 (1977)). *See also Frank v. Volkswagenwerk, A.G. of West Germany,* 522 F.2d 321, 322–28 (3d Cir.1975); and *Harka v. Nabati,* 337 Pa.Super. 617, 487 A.2d 432 (1985). Here, the September 17, 1986, letter allegedly caused a totally separate harm from the claims asserted against Fleet in Adv. No. 87–0420S.

Finally, assuming *arguendo* that Fleet and the Defendant *were* joint tortfeasors,

the Pennsylvania Uniform Contribution Among Tort-feasors Act, 42 Pa. C.S. § 8326, provides that the release of one joint tortfeasor does *not* release the other. There is an exception to the applicability of 42 Pa.C.S. § 8326 in a narrow category of circumstances where the liability of the party claiming benefit of a release to another arises solely from principles of vicarious liability, i.e. the party previously released is the actual tortfeasor and is the agent of the party claiming benefit of the release. *See Mamalis v. Atlas Van Lines, Inc.,* 364 Pa.Super. 360, 528 A.2d 198 (1987). However, the liability of the Defendant qua Fleet is not in this category because it is the Defendant who is allegedly the actual tortfeasor, for which Fleet could arguable be vicariously liable, not vice versa. Therefore, the Defendant cannot claim the benefit of the release to Fleet in this exception.

6. **The Defendant's Unrebutted Evidence That he did not Dispatch the Letter nor Knowingly Submit it to Fleet for Submission to her Absolves him from Liabilities to Littles.**

Far more persuasive is the Defendant's contention that he not only did not send the letter, but did not even authorize nor contemplate that Fleet would ever send it to any but a few select customers, which did not include Littles. If this recitation, supported by the testimony of both Mr. Price and the Defendant, is believed, then the Defendant clearly is not liable for dispatch of the letter. Furthermore, if this recitation is true, he could not be alternatively liable as a "form supplier," pursuant to 15 U.S.C. § 1692j, because he could not have furnished the letter "knowing that such form would be used" as an illegal collection device as to Littles.

To a certain degree, we share Littles' skepticism of the testimony of the Defend-

ant and Mr. Price. Their explanation certainly bears the mark of expediency. However, we are not prepared to label their testimony inherently lacking credibility, and Littles presented no evidence tending to rebut this testimony. Hence, we have no basis to discredit it, and we shall not do so. This finding is fatal to all aspects of Littles' cause of action, and requires that we recommend the entry of judgment in favor of the Defendant in that proceeding.

7. **The Defendant is Liable to Crossley for Actual Damages of $100.00 and Additional Damages of $100.00 Under the FDCPA.**

The foregoing defense, is, of course, peculiarly available to Littles. Crossley is clearly entitled to relief for the Defendant's violations of the FDCPA as to her, and, as we shall point out later, for the Defendant's concomitant violations of the DCPTR as to her as well. The only remaining FDCPA issue is the measure of her damages.

We have only a cold deposition record of the recitation of fright, inability to sleep or eat, and loss of weight resulting to the aged widow Crossley as a result of the Defendant's letter.[4] Unfortunately, this recitation is so strikingly similar to that of Littles that it raises suspicion. Further, we must confess that we are as skeptical of this recitation of purported dire consequences flowing from receipt of one letter and a telephonic exchange, the latter of which we declined to find actionable. In fact, our skepticism on this score is comparable to our skepticism of the extremely convenient recitations of the Defendant and Mr. Price exculpating the Defendant in the *Littles* matter. Nevertheless, we are not prepared to find that no damages are justified, and the Defendant has produced no evidence that Crossley is a piker. We

---

4. It was clearly within our discretion to admit Crossley's deposition into the record as evidence, pursuant to Bankruptcy Rule 7032 and Federal Rule of Civil Procedure 32(a)(3)(C), in light of her age and infirmity. We detected no element of an attempt to conceal Crossley from the court, as we believe that her failure to appear probably benefited the Defendant, not her.

The Defendant's contention that he was denied a right to confront Crossley is ludicrous, in light of (1) Our allowance of a second opportunity to the Defendant to depose Crossley subsequent to our ruling, which the Defendant eschewed; and (2) The Defendant's own apparent reluctance to appear on either December 15, 1987, or January 6, 1988.

do, however, limit the measure of Crossley's actual damages, per 15 U.S.C. § 1962k(a)(1), to $100.00.

There is ample authority for the principle that, even where the consumer suffers no actual damages at all, "additional damages" under 15 U.S.C. § 1692k(a)(2)(A) could be awarded. *See Baker, supra,* 677 F.2d at 780; *Harvey, supra,* 509 F.Supp. at 1221–22; and *Schrimpsher, supra,* 17 B.R. at 1016–17. No cases to the contrary appear to exist, despite the fact that § 1692k(a)(2), on its face, seems to allow statutory damages only as "additional" to actual damages. However, the award of § 1692k(a)(2) damages even when no actual damages have been proven is a practical result, and one that we endorse, because some damages should perforce result to a consumer subjected to an actionable collection practice under the FDCPA. The standard of measurement should be based on the "unsophisticated consumer standard" irrespective of the particular consumer's own sophistication or thickness of hide which protects that particular consumer from significant hurt.

We reject the Defendant's insinuation that Crossley, an elderly widow, is in any sense a sophisticated consumer, or that, even if she were, her degree of sophistication should eliminate her damage claim. We also reject the Defendant's contention that damages are properly collectible only if a consumer can produce evidence of actual physical injury or could collect damages only if the consumer could establish a claim based upon the tort of intentional infliction of emotional distress under applicable state law. We believe that this hypothesis of the Defendant arises from a misreading of the peculiar facts of *Carrigan, supra,* the sole authority from which it derives this principle.

The *Carrigan* plaintiff was himself a legal services attorney, a species whom we would presume would be among the most capable of recognizing false threats of a debt collector for what they are and be impervious to actual distress from subjection to same. The *Carrigan* court makes reference to the law of intentional infliction of emotional distress only as authority for its conclusion that damages were available to the *Carrigan* plaintiff for his "indignation" without a showing of any physical harm, or even a showing of any anguish or distress. The court then determined, as we do here, that the plaintiff's actual damages were $100.00. The reference to state law in *Carrigan* was therefore clearly not meant to limit the scope of damages to the FDCPA plaintiff, as the Defendant suggests, but to expand the scope of those damages to include recovery for mere indignation.

The very inadequacy of the tort of intentional infliction of mental distress to create a cause of action to prevent abusive collection practices was undoubtedly the motivation behind the enactment of such measures as the FDCPA and the DCPTR. Moreover, the tort of intentional infliction of mental distress remains available as an alternative cause of action for particularly extreme abusive collection practices. *See, e.g., Benjamin v. Global Collection Agency,* 71 D. & C. 56 (Del.Co.C.P.1974). It certainly would not appear to have been the intention of Congress in enacting the FDCPA or of the state Bureau of Consumer Protection in promulgating the DCTPR to duplicate a tort action already in existence. Thus, we reject the Defendant's contention that restrictive notions of recovery of damages for subjection to abusive collection practices, appearing in such intentional-infliction cases as *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 368 A.2d 770 (1976), can be carried over to FDCPA litigation.

In determining what damages we should allow under 15 U.S.C. § 1692k(a)(2)(A), we must consider the "frequency and persistence" of the Defendant's noncompliance, as well as the extent that "such noncompliance was intentional." Given our conclusion that the statements to Crossley in the subsequent telephone call cannot be attributed to the Defendant, the only actionable conduct of the Defendant was the dispatch of a single letter. We credit the Defendant's testimony that he was unaware at that time of the applicability of the FDCPA to his practice, as the Crossley letter was

dispatched less than thirty days after the enactment of the amendment eliminating the exemption of attorneys from the Act, and we therefore find a lack of intention on the part of the Defendant to violate the Act.

We do note that we reject the Defendant's suggestion that such ignorance of the law constitutes a defense under 15 U.S.C. § 1692k(c), which states as follows:

(c) A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

As the *Baker* court points out, 677 F.2d at 779–80, this language is almost identical to that of 15 U.S.C. § 1640(c) in the federal Truth–in–Lending Act, which the courts, including our Court of Appeals, have interpreted very narrowly. *See Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246, 248 (3d Cir. 1980). The Defendant made *no* showing of any procedures adapted by him to avoid error, let alone establishing same by a preponderance of the evidence, which is one of the prerequisites for invocation of this defense.

We therefore conclude that the Defendant is liable for some amount under 15 U.S.C. § 1692k(a)(2)(A), but, in light of consideration of the factors set forth in 15 U.S.C. § 1692k(b), determine that this sum should be only $100.00 in addition. We recognize that this sum is low, but, as we indicated above, we have some skepticism regarding Crossley's actual damages and we were impeded by our inability to judge her credibility in person, a factor which we are not inclined to weigh in her favor. *Compare Baker,* 677 F.2d at 777 (no actual damages, $100.00 awarded under § 1692k(a)(2)(A)); *Thomas, supra,* slip op. at 4–5 (actual damages between $100.00 and $500.00 awarded; damages between $250.00 and $500.00 awarded under § 1692k(a)(2)(A)); *Harvey, supra,* 509 F.Supp. at 1222 (no actual damages, $500.00 awarded under § 1692k(a)(2)(A));

*Carrigan, supra,* 502 F.Supp. at 471 (actual damages of $100.00 and damages of $250.00 under § 1692k(a)(2)(A) awarded); and *Schrimpsher, supra,* 17 B.R. at 1017 (no actual damages, $300.00 awarded under § 1692k(a)(2)(A)).

8. **The Defendant is also Liable to Crossley for $300.00 for his Violations of the CDPTR, and to her Counsel for Reasonable Attorney Fees.**

Although the sum awarded seems small, even relative to the awards in the above cases, two additional factors must be kept in mind. First, Crossley also seeks damage for a violation of the state DCTPR. The language of 37 PA. CODE § 303.3(14) mirrors that of 15 U.S.C. § 1692e(5): it is an unfair collection practice to "represent ..., directly or by implication, that certain action will be taken" if such action cannot legally be taken or if such action is not intended to be taken. In fact, the Defendant's liability under the DCTPR is, if anything, clearer than that under the FDCPA, because the definition of "debt collector" is far broader under the DCTPR, embracing any person who seeks to collect debts, be that person the creditor him(her)self or one who does not do so "regularly." *See* 37 PA. CODE § 303.1 (Definition of "debt collector").

As we previously pointed out in *In re Jungkurth,* 74 B.R. 323, 335–36 (Bankr.E. D.Pa.1987), any violation of the DCTPR is perforce a violation of the Pennsylvania Unfair Trade Practices and Consumer Law, 73 P.S. § 201–1, et seq. (hereinafter referred by its generic designation as a law punishing unfair or deceptive acts or practices, or "UDAP"). *See* 73 P.S. § 201–3.1. The section of UDAP providing for private actions, 73 P.S. § 201–9.2(a), states that a court shall punish its violations by awarding "actual damages or one hundred dollars ($100.00), whichever is greater," and allowing the court, in its discretion, to award treble damages to the aggrieved consumer.

As we noted in *In re Andrews,* 78 B.R. 78, 84–85 (Bankr.E.D.Pa.1987); and *In re Russell,* 72 B.R. 855, 872 (Bankr.E.D.Pa.

1987), awarding treble damages to consumers aggrieved by unfair trade practices is the normative judicial response under 73 P.S. § 201–9.2(a). We perceive no circumstances present here which should cause us to shrink from awarding Crossley a sum of treble her actual damages, or $300.00, under 73 P.S. § 201–9.2(a).

Like the courts in *Carrigan, supra,* 502 F.Supp. at 471; and *Schrimpsher, supra,* 17 B.R. at 1017, we do not hestitate to cumulate FDCPA and state remedies. We note that in *Carrigan,* like here, the state remedies were more liberal than these provided by the FDCPA.

Finally, we also observe that Crossley's counsel is entitled to a reasonable attorney's fee for successfully prosecuting this action, pursuant to both 15 U.S.C. § 1692k(a)(3) and 73 P.S. § 201–9.2(a). *See Andrews, supra,* 78 B.R. at 85; *Jungkurth, supra,* 74 B.R. at 336; and *Russell, supra,* 72 B.R. at 873. Thus, the Defendant's hyperbolic defenses to Crossley's rather obviously meritorious though modest claims will come home to roost.

A Proposed Order consistent with the foregoing proposed Findings of Fact and Conclusions of Law shall issue.